Keith DURR, Plaintiff,

v.

INTERCOUNTY TITLE COMPANY OF ILLINOIS, Defendant.

No. 92 C 7340.

United States District Court, N.D. Illinois, E.D.

Feb. 5, 1993.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Keith Durr ("Durr") has filed a putative class action against Intercounty Title Company of Illinois ("Intercounty") under a provision of the Real Estate Settlement Procedures Act ("RESPA"),[1] charging Intercounty with a violation of RESPA § 2607(b). Intercounty has responded with motions (1) to strike the prayer for relief advanced by Durr's counsel D. Alan Harris ("Harris") and (2) to dismiss Durr's First Amended Class Action Complaint ("Complaint") and this action. For the reasons stated in this memorandum opinion and order, both of Intercounty's motions are granted.

Durr's Complaint, which must be accepted as accurate for present purposes, alleges that on August 21, 1992 Durr completed the purchase of some residential real property in conjunction with which Intercounty provided "settlement services" (a term defined by RESPA § 2602(3)). Durr asserts that among its charges for those services, Intercounty included amounts for the recording of the deed and mortgage that were in excess of the actual recording fees and costs for those documents. And according to Durr, that overcharge by Intercounty violated RESPA § 2607(b) (Complaint ¶¶ 6–8, 11–13):

> 6. In connection with the transaction, defendant charged Keith Durr $25.00 to record the Deed and $37.00 to record the Mortgage.
>
> 7. In fact, the true recording cost for the Deed was $23.00, and defendant exacted an illegal, additional $2.00 payment for recording the Deed.
>
> 8. In fact, the true recording cost for the Mortgage was $31.50, and the defendant exacted an illegal, additional $5.50 payment for recording the Mortgage.
>
> \*     \*     \*     \*     \*     \*
>
> 11.  Plaintiff is informed and believes and on the basis of such information and

---

1. RESPA comprises 12 U.S.C. §§ 2601–2617. All citations to its provisions in this opinion will simply take the form "RESPA § —," reflecting the section numbering in Title 12 rather than RESPA's internal numbering.

belief alleges that defendant, in connection with its provision of "settlement services," engages in and at all times mentioned has engaged in the following practices: overcharging real estate sellers and buyers for settlement services, all in violation of The Real Estate Settlement Procedures Act of 1974, 12 U.S.C. secs. 2601 et seq. ("RESPA").

11. [sic] By charging the plaintiff $25.00 rather than the actual $23.00 cost for recording of the Deed, defendant violated 12 U.S.C. sec. 2607(b) by accepting a charge for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12. By charging the plaintiff $37.00 rather than the actual $31.50 cost for recording of the Mortgage, defendant violated 12 U.S.C. sec. 2607(b) by accepting a charge for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

13. This court has jurisdiction under 12 U.S.C. sec. 2614.

Although the Complaint ultimately fails for the reasons that will be explained later in this opinion, Intercounty's motion to strike will be addressed first. Here is how RESPA § 2602(3) refers to the concept of "settlement services" in an extensive but nonexhaustive (see *United States v. Graham Mortgage Co.*, 740 F.2d 414, 417 (6th Cir. 1984)) listing:

the term "settlement services" includes any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, and the handling of the processing, and closing or settlement[.]

And here is how RESPA § 2607(d)(2) unambiguously states the measure of damages for a violation of RESPA § 2607(b):

Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

In this instance the "settlement service involved in the violation" was, as already stated, Intercounty's transmittal of Durr's deed and mortgage from its offices (where the real estate closing took place) to the office of the Cook County Recorder of Deeds. Intercounty's charge imposed for that service was $1.50 for the handling of each document. According to the Complaint's allegations, Intercounty also received an additional undisclosed amount because the recording charges actually imposed by the Recorder of Deeds were less than Intercounty had billed to Durr (an excess of $.50 for the deed and $2 for the mortgage).[2]

That, however, is not how Harris has framed the purported cause of action that he advances on Durr's behalf. Instead, from the very inception of the case—beginning with the initial Complaint filed November 5, 1992—Harris has flouted the statute's plain meaning by asking not for three times the $7.50 total overcharge but for three times the *entire* amount that was billed to Durr by Intercounty for *all* of its services and outlays—$62 for the recording of both documents ($54.50 of which actually went to the Recorder of Deeds), $155 as Intercounty's closing fee (as to which there is no contention made that the fee was in any respect improper) and $170 as its title insurance premium (again an indisputably proper billing).

Promptly after this Court received the initial Complaint, it issued a November 13, 1992 sua sponte memorandum opinion and order

---

2. Intercounty's lawyer has explained the reason for the disparity in a manner summarized by this Court in its Opinion II, referred to a bit later in this opinion. On the current motions, however, it will be assumed that there was no legitimate basis for the overcharge—that it was inexcusable.

("Opinion I") that expressly called Harris' attention to the misguided and excessive claim that he had embodied in that pleading. On November 23 Harris amended that pleading by filing the Complaint, but he made no change at all in the respect referred to in the preceding paragraph. Instead he contemporaneously filed a nine-page "Response to Order of November 13, 1992" that talked all around that issue without ever suggesting a colorable (let alone a legitimate) basis for what he had done.

This Court followed with still another sua sponte memorandum opinion and order on December 1 ("Opinion II"), not only reiterating counsel's delinquency in that respect but also identifying some other problems with the claim as it then (and now) stood. As for the item now at issue, Opinion II at 264–65 said:

> When all the underbrush is cleared away, the arguments that Durr's counsel advances in the memorandum are entirely bogus in terms of both the RESPA statutory language *and* its purpose. *At most* the undisclosed settlement costs suffered by Durr would amount to $7.50, which trebled would come to $22.50.[3]

Yet Harris again did nothing to cure that patent defect. Little wonder, then, that Intercounty was compelled to resort to the filing of a motion to strike.

And there is no doubt here as to just where the fault lies. Intercounty has taken Durr's deposition, and he has clearly testified that it was his understanding that the *only* overcharge was what he referred to as an $8 amount (clearly the same items, though he was $.50 off). To be sure, no lawyer (Harris included) is obligated to follow his or her client's understanding of legal matters. But Intercounty also took the deposition of attorney Jess Forrest ("Forrest," the lawyer who handled the real estate transaction and who is now co-counsel for Durr in this case—

Forrest enlisted Harris when the idea of class action handling seemed to hold out the prospect for turning this petty dispute into a big-ticket lawsuit). And Forrest, obviously an experienced lawyer in real estate transactions, confirmed that the *only* overcharge was on the recording fees (what his Dep. 45 spoke of as "probably five, six dollars on the recording fees") and that "[e]very other fee that I have seen is customary in the industry" (Dep. 46). Forrest then went on (*id.*) to explain that last characterization based on his extensive experience with other title companies.[4] No, there is no question but that the dollar signs here were in Harris' eyes, and they obviously blinded him to the plain meaning of the law.

Accordingly the Complaint's prayer for relief must be stricken. And Harris' greed and obduracy must have their price. Unless Harris can offer up some better showing of the objective good faith that is demanded by Fed.R.Civ.P. ("Rule") 11 than he has done up to now, he will be subject to an "appropriate sanction" as mandated by that rule. And unless Harris can indicate why, given his persistence in the face of this Court's repeated importunings, the appropriate sanction should not entail his making Intercounty whole for the attorneys' fees and expenses incurred in dealing with that issue, that will be the price he must pay for advancing and sticking to his legally frivolous claim.

As for the motion to dismiss, here is the statute (RESPA § 2607(b)) invoked by Durr:

**(b) Splitting charges**

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

---

3. [Footnote by this Court] So that there can be no misunderstanding of the clarity of the message conveyed to Harris not once but twice (a message that this Court later repeated to him once again, this time orally at the January 6, 1993 status hearing in this case), copies of Opinions I and II are attached to this opinion.

4. That characterization, apparent even from the few pages of his deposition submitted to this Court with Intercounty's motion to strike, is heavily underscored by the information in Intercounty's new filing referred to in the last paragraph of this opinion.

Although a statutory heading is not part of the statute itself, the caption is consistent with the exceedingly plain meaning of the statute as one targeting only the *division* of charges where the giver is involved in rendering a "real estate settlement service" and the acceptor gets paid "other than for services actually performed." [5]

Here is how our Court of Appeals has confirmed the clear meaning and purpose of RESPA § 2607(b) in *Mercado v. Calumet Fed. Sav. & Loan Ass'n*, 763 F.2d 269, 270–71 (7th Cir.1985):

> We affirm because the complaint does not allege that Calumet gave or received "any portion, split, or percentage of any charge" to a third party. Section 8 of RESPA is an anti-kickback statute. The statute requires at least two parties to share fees. As the Senate Report explained, § 8 "is intended to prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' furnished for the referral of real estate settlement business. The section also prohibits a person that renders a settlement service from giving or rebating any portion of the charge to any other person except in return for services actually performed." S.Rep. 93–866, 93d Cong., 2d Sess. (1974), reprinted at 1974 U.S.Code Cong. & Admin.News 6551. The complaint does not allege the presence of any "other person."

*Mercado, id.* at 271 goes on to say:

> Congress considered and explicitly rejected a system of price control for fees; it concluded that the price of real estate services should be set in the market. See 1974 U.S.Code Cong. & Admin.News 6549–50. It directed § 8 against a particular kind of abuse that it believed interfered with the operation of free markets—the splitting and kicking back of fees to parties who did nothing in return for the portions they received.

Durr's attorney Harris points to the earlier decision in *United States v. Gannon*, 684 F.2d 433 (7th Cir.1981) (en banc)—though cited and meaningfully distinguished in *Mer-*

*cado*—as leading to a different reading. It does not. *Gannon* treated a counter attendant at the Cook County Torrens section as a RESPA violator for having exacted payments for filing in an amount beyond what the state law authorized—a "gratuity" for doing the very job that the counter attendant was hired to do. But that was done on the legal fiction that Gannon was wearing two hats—the "official capacity" hat and his own as an individual—and was therefore both "giver" and "acceptor" when he pocketed the unauthorized amounts (684 F.2d at 438):

> We believe a single individual *can* violate § 2607(b) by receiving in his official capacity a "charge" for the rendering of settlement services, but personally keeping a portion of the charge in fact for something other than the performance of those services.

That sharp distinction between *Mercado* and *Gannon* has been well expressed in *Duggan v. Independent Mortgage Corp.*, 670 F.Supp. 652, 653–54 (E.D.Va.1987).

Here the claimed misconduct of Intercounty simply does not come within the limited scope of RESPA § 2607(b). Durr's payment was made to Intercounty—clearly *they* were not the giver and acceptor who split a real estate settlement service charge. As for the other payment involved—from Intercounty to the Recorder of Deeds—it involves the exact opposite of the statutory prohibition, for there was no *acceptance* by the Recorder of a portion of the charges originally paid by Durr "other than for services actually performed." This case is as nonactionable under RESPA § 2607(b) as were *Mercado* and *Duggan*.

Durr's Complaint and this action are therefore dismissed for their failure properly to invoke the jurisdiction of this Court under RESPA § 2607(b). One further note needs to be added, however, as to post-dismissal matters. After this opinion had already been prepared for delivery to the parties at the previously-scheduled February 5, 1993 status hearing, this Court received Intercounty's motion for the imposition of sanctions under Rules 11 and 37. That motion asserts reasons over and above those that have been identified in this opinion as likely calling for

---

5. Lawyers should be especially familiar with that kind of requirement. It echoes their own responsibilities, both under former Code of Professional Responsibility DR 2–107(A)(2) and under the current Rule of Professional Conduct 1.5(f) and (g).

Rule 11 sanctions related solely to Intercounty's motion to strike. Accordingly the parties shall file the following submissions in this Court's chambers on or before February 15, 1993:

1. Durr and its counsel (both Harris and Forrest) are ordered to file their responses dealing both with the matters covered in this opinion and with Intercounty's motion for sanctions.

2. Intercounty may (but is not required to) file a supplement to its motion for sanctions to the extent if any that it deems appropriate, but limited to the issue of potential sanctions arising out of the matter addressed by its motion to strike. Because it is not yet certain what the ultimate scope of any sanctions to be imposed may encompass, Intercounty shall not now tender any submission as to the amount of attorneys' fees and other expenses that it has incurred in connection with the motion to strike or its other motions.

## APPENDIX

## MEMORANDUM OPINION AND ORDER

### [Dated November 13, 1992]

Keith Durr ("Durr") has filed a proposed class action against Intercounty Title Company of Illinois ("Intercounty"), charging Intercounty with a violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA," 12 U.S.C. §§ 2601–2617 [1]) in connection with the closing of Durr's purchase of a residence in August of this year. Based on its initial review of Durr's Complaint,[2] this Court sua sponte directs Durr's counsel to speak to the issues that are identified here.

According to Complaint ¶¶ 6–8 and 11–12, Intercounty overcharged Durr at the real estate closing by including in the closing statement a $25 figure (rather than the actual cost of $23) for recording the warranty deed running from Durr's sellers to Durr and $37 (rather than the actual cost of $31) for recording Durr's mortgage in favor of his lender, Greenwich Capital Financial, Inc. Despite the modest amount involved (all of $8 in excess out-of-pocket expense [3]), Durr's lawyers "have made a federal case out of it" [4] by claiming not only treble damages for Durr but also treble damages for the putative class of which Durr is a member.

At the outset some points ought to be made about Durr's own claim. Even if Durr's allegations are to be accepted (as this Court is bound to do in evaluating his Complaint), Durr's damages for the violation would appear to be three times the $8 overcharge or $24, rather than three times what Intercounty charged for *all* its settlement services as prayed for in Durr's Complaint (Durr was charged $62 for the recording fees referred to earlier, plus $155 for closing fees (which he does not challenge as a RESPA violation), and plus $170 for title insurance (also an unchallenged item)). And as for any additional relief beyond properly calculated treble damages, RESPA § 2607(d)(5) permits the court to award to a prevailing private-party plaintiff "reasonable attorneys' fees"—but Durr and his lawyer must be aware that if any such plaintiff has simply jumped in to file suit without having given the opponent notice of the claim and an opportunity to cure any violation, that factor would necessarily be taken into account in

---

**1.** All statutory citations in this opinion will take the form "RESPA § —," citing to the section numbering within Title 12 rather than to RESPA's internal section numbering.

**2.** This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986):

The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

Even if that threshold review discloses no problems of subject matter jurisdiction as such (and Durr's Complaint does not), a court need not

blind itself to other problematic aspects of the litigation as disclosed by the pleadings.

**3.** That represents the maximum that could be involved—for example, it does not appear whether part or all of the differential represents mailing costs or other legitimate out-of-pocket expenditures.

**4.** This quotation of the colloquial expression may be a bit unkind. Congress itself has "made a federal case" out of RESPA violations by providing for treble damages under RESPA § 2607(d)(2) and by conferring district court jurisdiction over such actions under RESPA § 2614.

determining the reasonableness of any fees sought to be collected.[5]

So much then for Durr's own apparently overblown individual claim. As for any effort to springboard that individual claim into a class action (something that this Court is obligated to address early under Rule 23(c)(1)), there is nothing to suggest that the complained-of overcharge is part of a regular pattern of activity engaged in by Intercounty. Instead Complaint ¶ 3 simply refers to "all other persons who have been improperly overcharged for settlement services by the defendant in connection with transactions involving a 'federally related mortgage loan.' " Durr's lawyers have proffered nothing to indicate that such a conclusory allegation—something that if sought to be introduced in the course of litigation would be subject to being stricken as "assuming facts not in evidence"—is the product of the prefiling inquiry that counsel are mandated to undertake by Rule 11.

Accordingly Durr's counsel are ordered to file in this Court's chambers on or before November 23, 1992 a statement as to (1) the predicate for their seeking as Durr's damages any amount in excess of $24 (that is, three times the $8 overcharge alleged in the Complaint) and (2) the nature of their prefiling inquiry as to, and the nature of the factual underpinning for, the existence of other similarly overcharged persons who would make up the putative class referred to in Complaint ¶ 3. Durr's counsel are also directed to transmit a copy of this memorandum order to Intercounty at the same address that they have designated for the service of process on it. This action is set for an initial status hearing at 8:45 a.m. November 30, 1992.

/s/ Milton I. Shadur
Milton I. Shadur
Senior United States
District Judge

---

**5.** There is of course an analogy in Fed.R.Civ.P. 11 litigation, where our Court of Appeals has taught that fee shifting is inappropriate unless a like opportunity to cure the violation as a matter of mitigation has been afforded to the offending party (see, e.g., *Dubisky v. Owens*, 849 F.2d 1034, 1038–39 (7th Cir.1988)). Indeed, that kind of curative opportunity is part of the proposed

## MEMORANDUM OPINION AND ORDER

[Dated December 1, 1992]

This Court's November 13, 1992 memorandum opinion and order (the "Opinion") directed counsel for plaintiff Keith Durr ("Durr") to respond to issues posed by Durr's proposed class action complaint, obvious to this Court even on a threshold review. In response Durr's counsel has filed both (1) a nine-page memorandum (with attached exhibits) and (2) a First Amended Class Action Complaint (the "Amended Complaint").[1]

One minor change has been made in the Amended Complaint in describing the asserted RESPA violation committed by Intercounty Title Company of Illinois ("Intercounty") in the transaction in which Durr bought his residence: Instead of a purported $8 overcharge, Durr claims that he was overcharged $7.50 in the "recording costs" for the deed and mortgage listed in Intercounty's closing statement. But Durr's counsel somehow persists in the claim that the recoverable treble damages under RESPA are to be measured by three times Intercounty's *total* settlement services, even though the $155 that it charged for closing fees and the $170 that it charged for title insurance were unquestionably disclosed to and are unchallenged by Durr.

In that respect the memorandum seeks to justify Durr's excessive claim by cloaking it in the knightly mantle of consumer protection. Of course this Court has no more desire to countenance any illegal or overreaching title insurer practices than Congress did in enacting RESPA. But this Court also sees no *public* benefit in converting RESPA into some type of Attorneys' Relief Act where the public weal is really not being served at all—or if it is, is being served minimally at best. When all the underbrush is cleared away, the arguments that Durr's counsel advances in the memorandum are

amendments to Rule 11 now pending for consideration by the Supreme Court.

---

**1.** Fed.R.Civ.P. ("Rule") 15(a) gives a plaintiff the absolute right to file an amended complaint where, as here, no responsive pleading has yet been filed.

entirely bogus in terms of both the RESPA statutory language *and* its purpose. *At most* the undisclosed settlement costs suffered by Durr would amount to $7.50, which trebled would come to $22.50.

But even that small amount appears substantially overstated. Simultaneously with its receipt of Durr's new filings, this Court also received a letter and accompanying exhibits from Intercounty's general counsel (a copy of course having been sent to Durr's lawyer). That letter disclosed the courteous handling of the matter by Durr's counsel once this suit had been filed—both by giving Intercounty additional time to retain counsel in the case and by forwarding a courtesy copy of the Opinion to Intercounty's lawyer. But the letter also disclosed facts that bear on this Court's proper treatment of the matter (including a confirmation of the Opinion's surmise that the suit had been launched without any *prior* effort by Durr's counsel to obtain RESPA relief for the client—assuming, that is, that Durr was entitled to relief).

In substantive terms, it appears that $.50 of the recording charge for the deed was based on the normal charge that is uniformly made *by the Recorder of Deeds* for mailing any document—a charge that was inapplicable to Durr only because his lawyer had a rented lockbox at the Recorder's Office.[2] As for the mortgage, $4 of the amount that Intercounty's closing officer improperly charged for its recording was attributable to the fact that Durr's lender employed 8-½″ × 14″ paper rather than the 8-½″ × 11″ paper that is now used in the vast majority of

residual mortgages (Intercounty tells its lawyer that the latter applies to 90% to 95% of current mortgages[3]), so that two fewer pages than the norm had to be recorded at the Recorder's fee of $2 per page.

Those two items account for all except the $1.50 per document charge that Intercounty made, as to which its preclosing statement to Durr stated:

> We have included a one dollar and fifty cent service and handling fee in the charges for any instruments recorded.

In sum, the situation is one in which (a) $.50 of the complained-of damage to Durr is apparently limited to a *very* small number of people at most, (b) another $4 of the claimed damage resulted from the combination of an advanced billing for the mortgage recording, based on the closing officer's mistaken assumption about the documents that he or she then failed to catch at the closing (once again something that seems to apply to a very small minority of transactions), and (c) the remaining $3 that was charged as Intercounty's "service and handling fee" appears likely to have been disclosed in compliance with RESPA.

It was a famous vaudeville routine—indeed, one involving a lawyer and his client—whose tag line was "pay the two dollars."[4] There is no question that the simple device of a telephone call by Durr's counsel would swiftly have resolved Durr's own legitimate claim without the need for bringing any legal action at all. If what has been set out here bears on the viability of any class action to begin with,[5] a serious cloud would seem to be

---

**2.** On that score Intercounty's lawyer says:

> To find an attorney who has such a lockbox is (I'm advised) quite a rare event. I'm further advised that same probably doesn't occur in (at best) more than 1 out of every 500 transactions.

This Court is not of course in a position to evaluate that assertion in factual terms, but if true it would bear significantly on the appropriateness of class treatment of that particular component of any RESPA claim.

**3.** Again (as with the item referred to in n. 2) this Court makes no finding in that respect, but the same comment that has been made in the last sentence of n. 2 applies here as well.

**4.** Although this Court is uncertain as to the original author-players in the two-man skit, its movie version—part of a 1930s film about Florenz Ziegfeld and his "Follies"—featured the late great comic Victor Moore as the client and the noted character actor (better known for serious roles than for comedy) Edward Arnold as the lawyer.

**5.** Moreover, where such extremely small potential claims are involved, the costs of ascertaining the existence or nonexistence of a class and of identifying and communicating with putative class members create a real dilemma. On the one hand a law violator should not of course be rewarded by being allowed to retain any illegally-obtained charges—but on the other hand, as suggested earlier, such statutes as RESPA are aimed

cast on the adequacy of representation issue that enters importantly into the Rule 23 decision as to class certification.[6]

At this reading this Court remains prepared to address its Rule 23 task in an appropriate fashion. But Durr and his counsel must recognize the hurdles they have to confront, with the related inquiry whether the game is worth the candle. Counsel for both sides should come prepared to discuss the issues at the previously-set December 2 status hearing.

/s/ Milton I. Shadur
Milton I. Shadur
Senior United States
District Judge

at benefiting the consuming public and not just the lawyers who are handling the case.

6. Durr's lead lawyer refers at Mem. 9 n. 3 to his prior experience in class actions. But the arguments that he has advanced to date do not instill much confidence, and it cannot be gainsaid that any classwide cause of action that might be recognized here would go a long way down the road urged by Professors Jonathan Macey and Geoffrey Miller in *The Plaintiffs' Attorney's Role in* *Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform,* 58 U.Chi.L.Rev. 1 (1991)—in which the class action client is done away with as a needless fiction, in favor of recognizing the lawyer as the real party in interest. But the thesis of Professors Macey and Miller does not reach quite so far as to embrace actions in which almost no benefit goes to any individual class member, while only the class counsel is very richly rewarded.