**Karen M. KAHRER, Individually and on behalf of all similarly situated individuals, Plaintiff,**

v.

**AMERIQUEST MORTGAGE COMPANY, Defendant.**

No. CIV.A.05–391.

United States District Court, W.D. Pennsylvania.

Feb. 13, 2006.

Gary F. Lynch, Esquire, Carlson Lynch Ltd., New Castle, PA, Daniel O. Myers,

Esquire, Richardson, Patrick, Westbrook & Brickman, Mt. Pleasant, SC, for Plaintiff.

Perry A. Napolitano, Esquire, Steven E. Klein, Esquire, Reed Smith LLP, Pittsburgh, PA, for Defendant.

## *ORDER*

STANDISH, District Judge.

AND NOW, this 13th day of February, 2006, after the plaintiff, Karen M. Kahrer, filed an action in the above-captioned case, and after a Motion to Dismiss was submitted by defendant, Ameriquest Mortgage Company, and after a Report and Recommendation was filed by the United States Magistrate Judge granting the parties ten days after being served with a copy to file written objections thereto, and upon consideration of the objections filed by defendant, and the response to those objections filed by plaintiff, and upon independent review of the motion and the record, and upon consideration of the Magistrate Judge's Report and Recommendation, which is adopted as the opinion of this Court,

IT IS ORDERED that defendant's Motion to Dismiss [Docket No. 4] is DENIED.

## *REPORT AND RECOMMENDATION*

HAY, United States Magistrate Judge.

### I.  *RECOMMENDATION*

It is respectfully recommended that the motion to dismiss submitted on behalf of defendant Ameriquest Mortgage Company (Docket No. 4) be denied.

### II.  *REPORT*

Plaintiff, Karen M. Kahrer ("Kahrer"), commenced this action on behalf of herself and all similarly situated individuals under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, claiming that by requiring plaintiff to repay a debt to an existing creditor as a condition of receiving a mortgage loan, Ameriquest Mortgage Company ("Ameriquest") has violated RESPA.

According to the complaint, plaintiff fell behind on payments owed to Sears Roebuck and Co. ("Sears") on a credit card debt and was contacted by Sherman Acquisition, an agent for and/or successor in interest to Sears.[1] During the course of the telephone conversation, plaintiff was referred to Ameriquest for the purpose of refinancing her home and was apparently "patched through" to one of Ameriquest's loan centers.[2] Ameriquest apparently encouraged plaintiff to apply for a mortgage refinancing loan in order to pay off the debt she owed to Sears indicating that any loan offered by Ameriquest would be conditioned on satisfying the entire debt to Sears with a portion of the proceeds.[3] On June 21, 2004, plaintiff and her husband closed a loan with Ameriquest and, as agreed, a portion of the loan proceeds was used to pay off plaintiff's debt to Sears.[4]

Plaintiff alleges that, upon information and belief, Sear's referral of plaintiff to Ameriquest was made in exchange for Ameriquest's promise to direct plaintiff to satisfy her debt to Sears as a condition of approving the loan and that because Ameriquest's promise represents a "thing of value" within the meaning of RESPA, it constitutes an illegal referral.[5] As such,

---

1. Complaint ¶¶ 11, 12 (Docket No. 1).

2. *Id.* ¶ 12.

3. *Id.* ¶ 13.

4. *Id.* ¶ 14.

5. *Id.* ¶¶ 15–17.

plaintiff contends that she and others similarly situated "have been the direct victims of Congress' prohibition against illegal referral payments for the obtainment of real estate settlement services involving a federally related mortgage loan." [6]

Plaintiff filed the instant complaint bringing a single claim against Ameriquest under § 8(a) of RESPA. Ameriquest has now filed a motion to dismiss pursuant to Rules of Federal Procedure 12(b)(6) and 12(b)(1) arguing that because plaintiff has not alleged that she suffered an actual injury she has no standing to bring a private cause of action under § 8(a) of RESPA.

A Rule 12(b)(6) motion is properly granted if, having accepted all of the allegations pled in the complaint as true and viewing them in a light most favorable to the plaintiff, it appears that the plaintiff would still be unable to prevail. *Maio v. Aetna, Inc.*, 221 F.3d 472, 481–82 (3d Cir. 2000). It is the defendant's burden to show that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

Under a 12(b)(1) motion, however, the allegations in the complaint are to be accepted as true only if the moving party has presented a facial challenge to court's jurisdiction or one which is based on the legal sufficiency of the claim. Under these circumstances, "dismissal is proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous....'" *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d at 1408–09, quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). *See Gould Electronics Inc. v. United States*, 220 F.3d 169, 178 (3d Cir.2000).

In contrast, where subject matter jurisdiction is challenged in fact, *i.e.*, where the challenge is based on the sufficiency of jurisdictional fact, the Court is not required to attach any presumptive truthfulness to the allegations in the complaint but may consider matters outside the pleadings to satisfy itself that it has jurisdiction. *Carpet Group International v. Oriental Rug Importers Association, Inc.*, 227 F.3d 62, 69 (3d Cir.2000). Under these circumstances, the non-moving party bears the burden of establishing that subject matter exists. *Id.*

■ Although neither party has addressed these standards or the distinction between a motion to dismiss under Rule 12(b)(6) for failure to state a claim and motion to dismiss for lack of subject matter jurisdiction under 12(b)(1), the Court of Appeals for the Third Circuit has found that the threshold to withstand a Rule 12(b)(1) motion to dismiss is lower than that required to survive a motion filed pursuant to Rule 12(b)(6) motion and, consequently, there is no prejudice to the plaintiff in treating a 12(b)(1) motion as one predicated on Rule 12(b)(6). *Maio v. Aetna, Inc.*, 221 F.3d at 481, citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d at 1409. As such, we need not decide which standard, if any, is more appropriately applied here but have treated Ameriquest's motion as one predicated on Rule 12(b)(6). We therefore turn to the question of whether plaintiff's failure to allege that she was overcharged for the settlement services provided to her in connection with the loan acquired from Ameriquest precludes a finding that she suffered an injury in fact or that she has standing to bring a private cause of action under § 8(a) of RESPA.

**6.** *Id.* ¶ 19.

■ The law governing standing is not in dispute. In order to satisfy the requirements for Article III constitutional standing it must be demonstrated that:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Society Hill Towers Owners' Association v. Rendell,* 210 F.3d 168, 175–76 (3d Cir. 2000), quoting *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 484–85 (3d Cir.1998). *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

As well, the Supreme Court has also instructed that whether or not a plaintiff has standing "often turns on the nature and source of the claim asserted. The actual or threatened injury required by Article III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing ....' " *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).

■ Further, it appears undisputed that RESPA was enacted, in part, to provide home buyers and sellers with "more effective advance disclosure" of settlement costs and to eliminate kickback or referral fees that "tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. §§ 2601(b)(1), (2). To that end, § 8 provides:

**(a) Business referrals**

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

**(b) Splitting charges**

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607. Damages for violating § 8 are provided for in subsection (d)(2) which states that:

> Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

12 U.S.C. § 2607(d)(2).

Ameriquest interprets this provision as permitting a plaintiff asserting a violation under § 8(a) to recover only three times the amount that he or she was overcharged for the settlement service involved in the alleged violation rather than three times the entire amount of the settlement charges. Because plaintiff has not alleged that she was overcharged for the settlement services provided in connection with the loan she received from Ameriquest, Ameriquest argues that she has not alleged an injury in fact and, thus, has no standing to bring the instant action.

In so arguing, Ameriquest relies principally on *Morales v. Attorneys' Title Insurance Fund, Inc.*, 983 F.Supp. 1418 (S.D.Fla.1997) (*"Morales"*), in which the plaintiffs brought claims under § 8(a) of RESPA alleging that various title insurance companies gave fees, kickbacks, and other things of value such as "payments, advances, funds, loans, services or other consideration" to their title agents in return for referrals of settlement business. *Id.* at 1422. The plaintiffs, like the plaintiff here, sought to recover three times what they were charged for the entire title insurance and title evidence paid to defendants rather than merely three times the portion of the charges that represent the fee or kickback prohibited under RESPA. *Id.* at 1427.

Looking to the statute itself, the legislative history and a case decided by the District Court for the Northern District of Illinois, the *Morales* Court rejected the plaintiffs' argument. Specifically, while acknowledging that the plaintiffs' argument was based on the literal language of the statute which provided for damages equal to three times the amount of *any charge paid for such settlement service*, the Court emphasized the portion of the damage section which described the person to whom damages were available, *i.e.*, the person charged for the settlement service *involved in the violation*, and found that the better reading of the statute was that it provided for three times the amount of the kickback or the portion of the fee that violated RESPA. *Id.* Further, comparing § 8(a) to § 9(a), which governs a seller's liability and provides for damages in "an amount equal to three times all charges made for such title insurance," the Court concluded that if Congress intended the same all encompassing measure of damages for "all charges" with regard to § 2607(d)(2) it would have used the same language. *Id.*

In addition, the Court cited to the legislative history of § 2607(d)(2) wherein it was stated that "any person or persons who violate the provisions of the section shall be liable to the person whose business has been referred for three times the amount of the *proscribed* payment, kickback or referral fee." *Id.* at 1428, quoting S.Rep. No. 93–866 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6546, 6552. Because this passage refers only to the prohibited payment, the Court found that the legislative history was contrary to the plaintiffs' position. *Id.*

Finally, the Court cited to *Durr v. Intercounty Title Co. of Illinois*, 826 F.Supp. 259 (N.D.Ill.1993) (*"Durr"*), *affirmed*, 14 F.3d 1183 (7th Cir.), *cert. denied*, 513 U.S. 811, 115 S.Ct. 63, 130 L.Ed.2d 20 (1994), upon which Ameriquest also relies, wherein the plaintiff brought, *inter alia*, a claim under § 2607(b), which prohibits a person from accepting any portion, split or percentage of a charge received in conjunction with a real estate settlement "other than for services actually performed." Upon receiving the complaint, in which the plaintiff sought three times the entire amount that was allegedly billed by the settlement company involved in his purchase of real estate, the Court issued a sua sponte memorandum opinion in which it directed plaintiff's counsel to address what the Court categorized as a "misguided and excessive claim." *Id.* at 260–61. Specifically, the Court found that, despite the modest eight dollars overcharged, plaintiff's lawyers had made a "federal case" out of the situation by seeking treble what was charged for all of the settlement services provided. *Id.* at 260–61, 263–264. Having failed to address the Court's concern in counsel's response and having filed an amended complaint without altering the claimed damages, the Court issued another memorandum opinion in which it found that the arguments advanced by plaintiff's counsel were "en-

tirely bogus in terms of both the RESPA statutory language *and* its purpose.'" *Id.* at 264–65. When counsel again did nothing to cure what the Court perceived as a patent defect, the defendant filed a motion to strike plaintiff's claim for relief which the Court granted. The Court also granted the defendant's subsequently filed motion for Rule 11 sanctions on the basis that counsel for plaintiff made a damage claim on behalf of a class of plaintiffs without inquiring into whether the defendant's overcharge was an isolated incident. Because counsel for plaintiff did not respond to the Court's earlier inquiry in this regard the Court concluded that the alleged class did not exist. *Durr v. Intercounty Title Co.*, 14 F.3d at 1187–88. Both rulings were upheld on appeal, *id.*, and both opinions are cited by the *Morales* Court to support its findings that the plaintiffs' proposed computation of damages in the case before it lacked merit. *Morales*, 983 F.Supp. at 1428.

In our view, however, the *Morales* opinion was wrongly decided and does not provide the basis for finding that plaintiff lacks standing to sue absent a specific allegation that she was overcharged for Ameriquest's settlement services. First, as the *Morales* Court appears to have acknowledged, the literal language of § 2607(d)(2) provides for three times the amount of *any charge* paid for the settlement services which would appear to encompass all of the charges associated with the services provided rather than only treble the amount of any overpayment. *See* 12 U.S.C. § 2607(d)(2) (emphasis added). Moreover, the language relied upon by the Court in *Morales*—that recovery may be had by the person "charged for the settlement services involved in the violation"— does not, in our view, suggest that only the overpayment is to be trebled. Indeed, as previously discussed, the cited language does not speak to damages at all but merely describes the person to whom liability is

owed, *i.e.*, one who was charged for the services where an illegal referral was made.

Nor does the fact that § 2608(b) provides for damages in "an amount equal to three times all charges made for such title insurance" where a violation of § 2608(a) has occurred appear to be dispositive here. While, it is true, as found by the *Morales* Court, that Congress could have used the same unambiguous "all charges" language in § 2607(d)(2) if it intended for damages to be based on the entire settlement service charge, it is also true that Congress could have stated that trebled damages pertained only to the overcharged portion of the fee as well. Moreover, it appears that trebling *any* charge paid for the settlement service is more indicative of an intent to include all charges rather than merely the portion that constitutes the overpayment.

Perhaps most important, however, is that the *Morales* Court—and Ameriquest for that matter—appears to have employed a somewhat flawed analysis in discussing RESPA's legislative history. In so doing, it recites the history when the statute was originally enacted in 1974 which, as previously discussed, stated that a person who violates § 2607 is liable "for three times the amount of the *proscribed* payment, kickback or referral fee." S.Rep. No. 93–866 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6546, 6552 (emphasis added). And, indeed, it appears that the statute itself originally provided that:

> [A]ny person or persons who violate the provisions of subsection (a) shall be jointly and severally liable to the person or persons whose business has been referred in an amount equal to three times the value or amount of the fee or *thing of value*, and any person or persons who violate the provisions of subsection (b) shall be jointly and severally liable to

the person or persons charged for the settlement services involved in an amount equal to three times the amount of the portion, split or percentage.

Real Estate Settlement Procedures Act of 1974, Pub.L. No. 93–533, § 8(D)(2), 88 Stat. 1724 (1974)(emphasis added). The statute was amended in 1983, however, at which time the language entitling one to recover three times the "thing of value" was replaced by the language at issue here which provides for liability for violating the statute in an amount equal to three times the amount of "any charge paid for such settlement services." Had Congress intended for liability to be limited to three times the overpayment or the "thing of value" as it had been since 1974 it would have had no need to amend the statute as it did. In short, it is simply nonsensical to suggest that Congress still intended to provide for damages in an amount three times the proscribed payment when it eliminated that very language from the statute.

In this manner, *Durr*, upon which the *Morales* Court relied, is equally flawed as the Court in that case did not analyze the statute or the legislative history at all but merely concluded, without discussion, that the plain meaning of "three time the amount of any charge paid for such settlement services" means three times the overcharge. The fact that Congress eliminated the language in the damage provision regarding the proscribed payment when it amended the statute in 1983, however, appears contrary to the *Durr* Court's conclusion and, thus, *Durr* cannot provide the basis for finding that failure to allege an overcharge is fatal to plaintiff's claim.[7]

Indeed, as argued by plaintiff, and Ameriquest does not dispute, the purpose of the 1983 Amendment to § 8 was to address Congress' concerns over "controlled business arrangements," whereby real estate settlement business is referred between two affiliated entities, which RESPA had not previously addressed. Under such circumstances, one entity is able to provide a benefit to its affiliate without the direct payment of a referral fee which, as stated in the 1982 House Committee Report, could result in harm to consumers beyond an increase in settlement charges as had been the concern when RESPA was first enacted. *See* H.R.Rep. No. 97–532, 97th Cong., 2nd Sess. at pp. 51–52 (1982). Specifically, the report contemplates, amongst other things, that in controlled business relationships,

the advice of the person making the referral may lose its impartiality and may not be based on his professional evaluation of the quality of service provided if the referror or his associates have a financial interest in the company being recommended. In addition, since the real estate industry is structured so that settlement service providers do not compete for a consumer's business directly, but almost exclusively rely on referrals from real estate brokers, lenders or their associates for their business, the growth of controlled business arrangements effectively reduce the kind of healthy competition generated by independent settlement service providers.

*Id.* at 52. As such, Congress amended RESPA to exempt controlled business arrangements from liability only in certain

---

7. Nor do the other two cases cited by Ameriquest alter the Court's findings in this regard as the Courts in both of those cases relied upon *Morales* and *Durr* and the 1974 legislative history in determining that their respective plaintiffs lacked standing because they neglected to allege that they were over-

charged for the settlement services they received. *See Moore v. Radian Group, Inc.*, 233 F.Supp.2d 819, 824–826 (E.D.Texas 2002), *affirmed*, 69 Fed.Appx. 659 (5th Cir.2003); *Contawe v. Crescent Heights of America, Inc.*, 2004 WL 2244538 *3–4 (E.D.Pa. October 1, 2004).

circumstances,[8] and to modify the applicable damage provision found in subsection (d)(2). With respect to the latter, the 1983 House Committee Report conveys that:

> If the persons involved in controlled business arrangements violate the conditions governing such arrangements, they shall be jointly and severally liable to the persons whose settlement service is involved in the amount of three times the amount of the charge paid for the settlement service plus court costs and reasonable attorneys' fees.

H.R.Rep. No. 98–123, 98th Cong., 1st Sess. at p. 77 (1983). It would therefore appear that Congress intended not only to create a private right of action but to impose damages based on the amount paid by the consumer and not the amount of the referral payment. Indeed, calculating the penalty based on the entire amount of the settlement service appears to address situations where no direct referral fee has been paid.[9]

Although not called upon to resolve this precise issue, the Court in *Pedraza v. United Guaranty Corp.*, 114 F.Supp.2d 1347 (S.D.Ga.2000), nevertheless set forth what it perceived to be Congress' strategy in reforming the market for real estate settlement services and in so doing interpreted § 8(d)(2) in this very manner. Specifically, the Court stated that:

> Section 2607(d)(2) allows persons whose cost for settlement services were incurred in violation of the anti-kickback provision to recover treble the cost of such unlawful charge, regardless of whether such a person actually paid an inflated cost for such services.

*Id.* at 1351.[10]

The District Court for the Southern District of Georgia later expounded on its position, albeit in an unpublished opinion, in *Patton v. Triad Guaranty Insurance Corp.*, No. CV100–132 (S.D.Ga. October 10, 2002) (*"Patton"*), in which the plaintiffs brought suit challenging an alleged kickback scheme involving private mortgage insurance.[11] The defendants sought sum-

---

**8.** The prerequisites for permissible controlled business arrangements, which include a good faith disclosure and a written estimate of the range of charges generally made by the provider, are set forth in 12 U.S.C. § 2607(c)(4). *See also* H.R.Rep. No. 98–123, 98th Cong., 1st Sess. at p. 75 (1983).

**9.** Moreover, this interpretation is consistent with the implementing regulations promulgated by the U.S. Department of Housing and Urban Development ("HUD"). In defining the term "thing of value," the regulations state that: "The term 'payment' is used throughout [the regulations] as synonymous with the giving or receiving any 'thing of value' and does not require transfer of money." 24 C.F.R. § 3500.14(d). As well, under subsection (g), defining "Fees, salaries, compensation, or other payments" the regulations state that: "The fact that the transfer of the thing of value does not result in an increase in any charge made by the person giving the thing of value is irrelevant in determining whether the act is prohibited." 24 C.F.R. § 3500.14(g)(2).

**10.** As pointed out by Ameriquest, *Pedraza's* findings in this regard have been criticized by at least one Court as dicta and as being in conflict with *Morales*, *Durr*, and *Moore*. *See Mullinax v. Radian Guaranty Inc.*, 311 F.Supp.2d 474, 485 (M.D.N.C.2004) (*"Mullinax"*). For the reasons stated above, however, the undersigned believes that those cases were wrongly decided as they ignore the statute's legislative history and, in particular, the 1983 Amendment. Interestingly, in *Mullinax*, having noted that the treatise relied upon by the plaintiffs in that case faulted *Morales* and *Moore* for reading the legislative history incorrectly, the Court declined to investigate the matter. *See* Barron & Berenson, *Federal Regulation of Real estate and Mortgage Lending* § 2:56 (4th ed.2003). Indeed, it did not address RESPA's legislative history at all but merely adopted *Morales's* and *Moore's* legislative interpretation.

**11.** A copy of the *Patton* opinion is attached to Plaintiff's Response to Defendant's Motion to Dismiss (Docket No. 8).

mary judgment arguing that there was no evidence that the plaintiffs' insurance premiums were inflated as a result of the alleged scheme and that the plaintiffs had no standing to file a suit under the "filed rate doctrine" since mortgage insurance is subject to regulation by state insurance commissioners. The Court disagreed opining that:

> Consumer protection statutes like RESPA are designed to remedy and prevent harm arising from practices that injure many people but are not, in most instances, sufficiently damaging to outweigh the cost of litigation. Often, these statutes provide for a private right of action and attempt to encourage litigation by allowing "statutory damages." Statutory damages relieve litigants of the burden of having to prove an exact measure of pecuniary harm arising from a violation of their rights under the statute. They also provide litigants with a bounty for acting in the public interest *Crabill v. Trans Union, L.L.C.* 259 F.3d 662, 666 ([7th Cir.] 2001) ("Many statutes, notably consumer protection statutes, authorize the award of damages (called 'statutory damages') for violations that cause so little measurable injury that the cost of proving up damages would exceed the damages themselves, making the right to sue nugatory.")
>
> RESPA gives consumers the right, enforceable by a private right of action for statutory damages, to purchase settlement services from companies that have not participated in a kickback scheme.
>
> \* \* \* \* \* \*
>
> The purpose of a private right of action under RESPA is not to provide a remedy for individual consumers who think that they are paying too much for settlement services and prefer litigation to the regulatory process. The purpose of the statute is to prevent certain practices that are harmful to all consumers by establishing that consumers have a right not to be subjected to those practices and providing both public and private remedies for violations of that right. The statute is intended to help all consumers, whether or not they participate in the class action, by offering a bounty to litigants who can come forward and show that their own rights were violated.

*Id.* at pp. 5–6, 12. In addition, the Court found, based on the literal language of the statute as well as the legislative history, that the proper measure of damages under RESPA "is three times the entire amount paid for the settlement services involved in the alleged kickback scheme, not three times the difference between what was actually paid and what should have been paid." *Id.* at p. 11.

In our view, the *Patton* Court's analysis appears to be more consistent with the legislative history and the literal language of the statute than that found in *Morales, Durr* and *Moore,* and, while lacking in precedent, nevertheless supports a finding that plaintiff need not allege that she has been overcharged for the settlement services provided by Ameriquest in order to bring a private right of action under § 8 of RESPA. *See Boulware v. Crossland Mortgage Corp.,* 291 F.3d 261, 266 (4th Cir.2002) ("Section 8(a) prohibits the payment of formal kickbacks or fees for the referral of business and does not require an overcharge to a consumer.")

For these reasons, it is recommended that the motion to dismiss submitted on behalf of defendant Ameriquest Mortgage Company (Docket No. 4) be denied.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation. Any party opposing the objections shall have seven (7) days from the

date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.