**Erick C. CARTER, et al., Plaintiffs,**

**v.**

**WELLES–BOWEN REALTY, INC., et al., Defendants.**

**No. 3:05 CV 7427.**

United States District Court,
N.D. Ohio,
Western Division.

May 31, 2007.

James S. Timmerberg, John T. Murray, Murray & Murray, Sandusky, OH, John L. Huffman, Mickel & Huffman, Toledo, OH, for Plaintiffs.

Richard H. Carr, Balk, Hess & Miller, Barry W. Fissel, Stuart J. Goldberg, Eastman & Smith, Toledo, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

ZOUHARY, District Judge.

This matter is before the Court on Plaintiffs' Motion for Class Certification (Doc. No. 47) and Defendants' Motions to Dismiss (Doc. Nos. 61, 65). A hearing was held on March 29, 2007 (Doc. No. 79). The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 2614, which provides that actions under 12 U.S.C. § 2607 "may be brought in the [U.S. District Court] ... for the district in which the property involved is located, or where the violation is alleged to have occurred...." For the reasons stated below, Defendants' Motions to Dismiss are granted. The Court need not reach Plaintiffs' Motion.

### BACKGROUND

Defendant Welles Bowen Title Agency, LLC (WB Title) is an entity co-owned by Defendants Welles Bowen Investors, LLC (WB Investors) and Chicago Title Insurance Company (Chicago Title). Chicago Title owns a 51.1% share of WB Title, while WB Investors owns the remaining 49.9%. Defendant Welles–Bowen Realty, Inc. (WB Realty) is a real estate agency owned by the same individuals that own WB Investors. WB Title, WB Realty, and WB Investors will be referred to collectively as the Welles–Bowen Defendants.

In September 2005, Plaintiffs Erick and Whitney Carter purchased a home in Perrysburg, Ohio, and were represented in this transaction by WB Realty. The Carters engaged WB Title to perform real estate settlement services incident to this purchase, and were referred to WB Title by WB Realty. The Carters contend that WB Title is a sham title company which does not perform any settlement work and refers all title work to Chicago Title. Plaintiffs further claim that the arrangement among Defendants is nothing more than an elaborate scheme to enable Chicago Title to provide illegal kickbacks to WB Realty in exchange for the referral of real estate settlement work. Notably, however, the Carters do not allege that they were overcharged for title insurance or settlement services.

Plaintiffs brought the instant action on behalf of themselves and other persons similarly situated, alleging that Defendants violated Sections 8(a) and 8(b) of the Real Estate Settlement Procedures Act (RESPA) [12 U.S.C. §§ 2607(a) and (b) ]. Specifically, Plaintiffs allege that the WB Title entity violates RESPA's anti-kickback and anti-fee-splitting provisions because the entity itself does not provide settlement services. Defendants contend that WB Title is a permissible "affiliated business arrangement" as that term is defined by 12 U.S.C. § 2602(7), and it cannot violate Sections 2607(a) or (b) because it satisfies a safe-harbor provision located in 12 U.S.C. § 2607(c)(4)(A)-(C).

Plaintiffs filed a Motion for Class Certification seeking to certify the following proposed class (Mem. in Support of Class Cert., Doc. No. 49, p. 9):

> All residents of Ohio who, since November 9, 2004, paid Welles Bowen Title Agency, LLC for real estate settlement

services in connection with the purchase or sale of a residential property if either of the parties to the transaction was referred to Welles Bowen Title Agency, LLC by Welles–Bowen Realty, Inc. or one of its agents.

In response, Chicago Title filed a Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) (Doc. No. 61), alleging that the Court lacks subject matter jurisdiction because Plaintiffs suffered no injury-in-fact and thus have no standing. The Welles–Bowen Defendants filed a Motion to Dismiss pursuant to Federal Rule 12(b)(1) (lack of standing) and also Rule 12(b)(6) (lack of subject matter jurisdiction) (Doc. No. 65).

## STANDARDS OF REVIEW

### Federal Civil Rule 12(b)(1)

Rule 12(b)(1) provides that Defendants may file a motion to dismiss based on a "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). Plaintiffs have the burden of proving jurisdiction when subject matter jurisdiction is challenged under 12(b)(1). *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir.1986). In the context of a Rule 12(b)(1) motion, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A Rule 12(b)(1) motion to dismiss will be granted only if, taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim.

### Federal Civil Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint. In scrutinizing the Complaint, the Court is required to accept the allegations stated in the Complaint as true, *Hishon*, 467 U.S. at

73, 104 S.Ct. 2229, while viewing the Complaint in a light most favorable to Plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that Plaintiffs can prove no set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Westlake*, 537 F.2d at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.2003).

## DISCUSSION

### Standing

■ Defendants allege Plaintiffs lack standing to bring this action, and thus the Court does not have subject matter jurisdiction over their claims. The three-prong test for Article III standing is set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) as follows:

> First, the plaintiff must have suffered an "injury in fact".... Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision (internal quotation marks and citations omitted).

"Injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical...." *Id.* (internal quotation marks and citations omitted). Plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing these elements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S.

83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). If Plaintiffs fail to establish any one of these elements, the Court is deprived of jurisdiction to hear the suit. *Id.*

In the instant action, Defendants contend that Plaintiffs have not met the "injury-in-fact" requirement for Article III standing because they were not over-charged for settlement services.[1] Plaintiffs, on the other hand, contend that RESPA creates a private right of action to sue for *per se* violations of its anti-kick-back and anti-fee-splitting provisions, regardless of whether actual monetary damage was incurred. Plaintiffs argue that RESPA creates a "right to a free and competitive marketplace," and Defendants' interference with this right constitutes an "injury in fact" (Oral Arg. Tr., p. 18).

The relevant portions of 12 U.S.C. § 2607 are reproduced below (emphasis added):

(a) Business referrals

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) Splitting charges

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

\* \* \*

(d) Penalties for violations; joint and several liability; treble damages; actions for injunction by Secretary and by State officials; costs and attorney fees; construction of State laws

\* \* \*

(2) Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons **charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.**

The damages provision of Section 2607(d)(2) is the focal point of the standing analysis. Plaintiffs, and the cases they rely upon, assert that Section 2607(d)(2) provides for treble damages of the entire settlement service fees. Defendants, and the cases upon which they rely, assert that this section provides for treble damages of the overcharge fee only, not all settlement service fees.

Defendants primarily rely on *Morales v. Attorneys' Title Ins. Fund,* 983 F.Supp. 1418 (S.D.Fla.1997) and *Moore v. Radian Group, Inc.,* 233 F.Supp.2d 819 (E.D.Tex. 2002), *aff'd,* 233 F.Supp.2d 819 (5th Cir. 2002), to support their argument.

In *Morales,* the plaintiffs alleged violations of Sections 2607(a) and (b). While the *Morales* plaintiffs specifically pled an overcharge, the court held that any over-charge claim in that case was precluded by the filed-rate doctrine. The court then addressed the amount of damages permitted by Section 2607(d)(2). The *Morales*

---

1. Defendants also devoted a significant amount of briefing to the issue of the "filed rate doctrine." However, Plaintiffs do not contest that they were charged the filed rate, nor do they contend that the filed rates are unreasonable (P.'s Response, Doc. No. 67, p. 2). Because Plaintiffs do not allege they were overcharged or that the filed rates are unreasonable, the Court does not need to address the filed-rate doctrine.

court noted that the statute permits recovery by "the person ... charged for the settlement service **involved in the violation.**" *Morales*, 983 F.Supp. at 1427 (quoting 12 U.S.C. § 2607(d)(2) (emphasis added)). Relying on this language, the court concluded that the better reading of this section is that "the damage award consist of three times the amount which violates RESPA." *Morales*, 983 F.Supp. at 1427.

The *Morales* court found further support by examining another RESPA recovery provision. Section 2608(a) prohibits sellers from requiring buyers to use a specific title insurance company. Section 2608(b) provides damages for violating Section 2608(a) "in an amount equal to three times **all charges made** for such title insurance." 12 U.S.C. § 2608(b) (emphasis added). The *Morales* court concluded that:

> Reading the two damages sections *in pari materia*, it is obvious that, in situations where Congress intended damages to be based on the entire amount of the settlement charge, it made such intention clear and unambiguous through the use of the words "all charges." Had Congress intended the same measure of damages with regard to section 2607(d)(2), it would have used the same language.

*Morales*, 983 F.Supp. at 1427. Finally, the court cited *Durr v. Intercounty Title Co. Of Ill.*, 826 F.Supp. 259 (N.D.Ill.1993), *aff'd*, 14 F.3d 1183 (7th Cir.1994), which adopted a similar interpretation of this section. *Morales*, 983 F.Supp. at 1428.

In *Moore*, the court directly addressed the Article III standing issue, specifically, whether a violation of RESPA confers standing without an allegation of financial injury. *Moore*, 233 F.Supp.2d at 823. There, the plaintiffs alleged that in exchange for discounted agency pool insurance, lenders referred private mortgage insurance (PMI) business to mortgage insurers, constituting an unlawful referral arrangement. The plaintiffs did not allege an overcharge, only that the defendants invaded a right created by RESPA.

The *Moore* court relied on *Durr* and *Morales* for authority limiting plaintiffs' private right of action under RESPA's kickback provision to the overcharge fee. *Moore*, 233 F.Supp.2d at 824. The court concluded that these decisions were consistent with the purpose of RESPA, which is, in part, to ensure that consumers "are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." *Id.* at 825 (quoting 12 U.S.C. § 2601(a)). The *Moore* court held:

> Tying (and trebling) the recoverable damages to that portion of the charge for the settlement service "involved in the violation" advances the purposes of RESPA while respecting Article III's command that a private plaintiff must suffer an actual injury before invoking the jurisdiction of a United States District Court.

*Moore*, 233 F.Supp.2d at 825.

The leading case opposing *Morales* and *Moore* is *Kahrer v. Ameriquest Mortgage Co.*, 418 F.Supp.2d 748 (W.D.Pa.2006). In *Kahrer*, the plaintiff alleged that by requiring her to repay a debt to an existing creditor as a condition of receiving a mortgage loan, the defendant violated RESPA. The *Kahrer* court extensively discussed the *Morales* decision, and concluded that it was wrongly decided. *Id.* at 753. The *Kahrer* court interpreted Section 2607(d)(2) as applying to "any charge paid for such settlement services." *Id.*

The *Kahrer* court argued that the focus by *Morales* on the amount "involved in the violation," as a limitation of damages, was misplaced. The court contended that this language "does not speak to damages at all

but merely describes the person to whom liability is owed, i.e., the one who was charged for the services where an illegal referral was made." *Id.* at 753. Further, the *Kahrer* court did not read Section 2608(b) as limiting the provisions of Section 2607(d)(2), as suggested by *Morales,* because use of the phrase "any charge" is "more indicative of an intent to include all charges rather than merely the portion that constitutes the overpayment." *Id.*

The *Kahrer* court's primary criticism of *Morales, Moore,* and *Durr* is that they did not discuss the 1983 amendment to RESPA which modified the damages provision of 12 U.S.C. § 2607(a). The earlier version of the statute read as follows:

> [A]ny person or persons who violate the provisions of subsection (a) shall be jointly and severally liable to the person or persons whose business has been referred in an amount equal to three times the value or amount of the fee or thing of value, and any person or persons who violate the provisions of subsection (b) shall be jointly and severally liable to the person or persons charged for the settlement services involved in an amount equal to three times the amount of the portion, split or percentage.

*Kahrer,* 418 F.Supp.2d at 753–54 (quoting Real Estate Settlement Procedures Act of 1974, Pub.L. No. 93–533, § 8(D)(2), 88 Stat. 1724 (1974)). According to the Kahrer court, it would be "nonsensical" to restrict Section 2607(d)(2) to include only the overcharge or "thing of value" when the 1983 amendment eliminated this language. *Id.* at 754.

Two subsequent district court decisions have adopted the ruling in *Kahrer.* *See Pettrey v. Enterprise Title Agency, Inc.,* 241 F.R.D. 268 (N.D.Ohio 2006); *Robinson v. Fountainhead Title Group Corp.,* 447 F.Supp.2d 478 (D.Md.2006). In *Pettrey,* a decision from this District, the court considered the plaintiffs' allegations that "sham" affiliated business arrangements were used by the defendants to disguise referral fees as a return on investment. *Pettrey* adopted the *Kahrer* decision and held that the plaintiffs could seek three times the amount of the entire settlement charge. *Id.* at 277. However, the *Pettrey* defendants did not raise the standing issue and, moreover, the *Pettrey* plaintiffs did allege an overcharge. *Pettrey* discussed the measure of damages to provide background before ruling on the main issue— class certification. *See id.* at 276–77.[2]

---

**2.** *Pettrey* is also distinguishable here on the issue of class certification. *Pettrey* held that plaintiffs' RESPA claims satisfied the Rule 23(a) prerequisites, but denied class certification primarily because the individual issues predominated the common issues. *Pettrey* involved six different alleged "sham" ABAs, while here, there is only one ABA; further, *Pettrey* involved multiple state-law claims, including a claim for negligent misrepresentation which required an inquiry into whether each person "relied" on an oral representation by one of the defendants. Here we only have RESPA claims, no state law claims, and no individual issues (other than the amount of damages for each plaintiff).

*Pettrey* also held that the 10–part test for determining whether an entity is a *bona fide* provider of settlement services, as set forth in

HUD Statement of Policy 1996–2 (61 Fed. Reg. 29258), should be given the full force of federal regulations. *Pettrey,* 241 F.R.D. 268 at 275. Compare *Morrison v. Brookstone Mortg. Co.,* No. 2:03–CV–729, 2006 WL 2850522, at *7, 2006 U.S. Dist. LEXIS 73389, at *22–*24 (S.D.Ohio Sept. 29, 2006), which held that HUD statements of policy are not entitled to *Chevron* deference because they are not subject to notice and comment under the Administrative Procedures Act. *Id.* at 2006 WL 2850522, *7, 2006 U.S. Dist. LEXIS 73389, *23 (citing *Chevron USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Although briefed and argued by the parties in the instant case, the Court need not reach this issue as well, but finds the *Morrison* reasoning persuasive.

The Court agrees with the *Morales* and *Moore* decisions, and is not persuaded by the *Kahrer* court's interpretation of the 1983 amendment. The *Kahrer* decision placed great weight on the fact that Congress removed the term "thing of value" from Section 2607(d)(2), *Kahrer*, 418 F.Supp.2d at 754, and concluded Congress must have intended to expand recovery of damages. What *Kahrer* overlooks, however, is that the earlier version of Section 2607(d)(2) was composed of two subsections: one providing a measure of damages for violating Section 2607(a), and the other providing damages for violating Section 2607(b). *See* Real Estate Settlement Procedures Act of 1974, Pub.L. No. 93–533, § 8(D)(2), 88 Stat. 1724 (1974). The 1983 amendment **consolidated** these two damage provisions to create one universal measure of damages for violations of both subsections. Removal of the phrase "thing of value" was necessary when consolidating these two subsections because Section 2607(b) does not contain the phrase "thing of value." Therefore, the amendment did not reflect an expansion of recoverable damages.

The Supreme Court has held that "[u]nder established canons of statutory construction, 'it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'" *Finley v. United States*, 490 U.S. 545, 554, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), *superseded by statute on other grounds* (quoting *Anderson v. Pacific Coast S.S. Co.*, 225 U.S. 187, 199, 32 S.Ct. 626, 56 L.Ed. 1047 (1912)). See, e.g., *Conroy v. Aniskoff*, 507 U.S. 511, 519, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993). There is no indication, in either the history of the Act or the Act itself, that Congress intended to change the meaning of Section 2607(d)(2) via the 1983 amendment.

If Congress intended to allow plaintiffs to recover treble the entire amount of settlement charges, it would have used the clear, unambiguous language that it already used when drafting the damage provision of the very next section, 12 U.S.C. § 2608(b). Instead, it chose language limiting recovery to "any charge paid" for "the settlement service **involved in the violation**" of RESPA. 12 U.S.C. § 2607(d)(2) (emphasis added). The fact that Congress amended Section 2607(d)(2) in 1983, yet did not employ clear language permitting recovery of **all** settlement charges, weighs in favor of Defendants' interpretation.

Furthermore, the 1983 amendment did not change RESPA's codified purpose of protecting individuals "from unnecessarily high settlement charges." That purpose, codified in 12 U.S.C. § 2601, does not support Plaintiffs' sweeping claim in this case where Plaintiffs concede the charges were not unreasonable or excessive. Reading the statute in the manner adopted in *Morales* and *Moore* strikes the best balance between "advancing" the express purpose of RESPA while "respecting" the Constitutional requirement of an injury-in-fact.

■ As Plaintiffs do not allege any overcharge or other concrete injury, they lack standing to bring a claim under Section 2607(a) or (b). Accordingly, the Court is without subject matter jurisdiction, and Defendants' Motions to Dismiss (Doc. Nos. 61, 65) are granted pursuant to Rule 12(b)(1); Plaintiffs' Motion for Class Certification (Doc. No. 47) is denied as moot.

IT IS SO ORDERED.