*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0024p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ERICK C. CARTER, et al.,
    *Plaintiffs-Appellants,*

UNITED STATES OF AMERICA,
    *Intervenor,*

  *v.*

WELLES-BOWEN REALTY, INC., et al.,
    *Defendants-Appellees.*

No. 07-3965

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 05-07427—Jack Zouhary, District Judge.

Argued: April 28, 2008

Decided and Filed: January 23, 2009

Before: BATCHELDER and SUTTON, Circuit Judges; BARZILAY, Judge.[*]

_____

## COUNSEL

**ARGUED:** John T. Murray, MURRAY & MURRAY CO., L.P.A., Sandusky, Ohio, for Appellants. Richard H. Carr, BALK, HESS & MILLER, Toledo, Ohio, Andrew S. Pollis, HAHN LOESER, Cleveland, Ohio, for Appellees. **ON BRIEF:** John T. Murray, MURRAY & MURRAY CO., L.P.A., Sandusky, Ohio, for Appellants. Richard H. Carr, BALK, HESS & MILLER, Toledo, Ohio, Stuart J. Goldberg, Barry W. Fissel, EASTMAN & SMITH, Toledo, Ohio, for Appellees. Christine N. Kohl, Michael Jay Singer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

_____

[*]The Honorable Judith M. Barzilay, Judge for the United States Court of International Trade, sitting by designation.

1

---

**OPINION**

---

BARZILAY, Judge.  This appeal involves the issue of whether an allegation that section 8 of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607, has been violated confers standing even if the consumer does not allege an above-market rate charge for services, *i.e.* an "overcharge."  The district court, in an opinion and order granting the Defendants-Appellees' Motion to Dismiss, held Plaintiffs-Appellants lacked standing to bring a claim under § 2607 because they did not allege any overcharge or other concrete injury.  *See Carter v. Welles-Bowen Realty, Inc.*, 493 F. Supp. 2d 921, 927 (N.D. Ohio 2007) ("*Carter I*").  Appellants now appeal, arguing that this court should reject the district court's "overcharge approach" to standing.  For the reasons stated below, the court  reverses the decision of the district court and remands the matter to the district court for further proceedings consistent with this opinion.

**I. Background**

On September 1, 2005, Appellants Erick and Whitney Carter ("the Carters") entered into a residential real estate purchase agreement for a home in Perrysburg, Ohio. The Carters were represented in this transaction by the real estate agency of Appellee Welles-Bowen Realty, Inc. ("WB Realty").  WB Realty is co-owned by Appellees Welles-Bowen Investors, LLC ("WB Investors") and Chicago Title Insurance Company ("Chicago Title").[1]  Based on WB Realty's referral, the Carters utilized WB Title at the close of their purchase agreement to perform real estate settlement services.  WB Title charged the Carters $946.28 for title insurance, which consisted of $696.28 for an owner's policy, $75.00 for a title commitment or binder, $100.00 for survey coverage, and $75.00 for an Environmental Protection Lien ("EPL") endorsement.  JA 221.  Each

---

[1]The former owns a 49.9% share of Welles-Bowen Title Agency, LLC ("WB Title"), while the latter owns the remaining 51.1% share.

of these charges was detailed in an Affiliated Business Arrangement Disclosure Statement, which the Carters reviewed prior to closing.

The Carters filed a complaint on November 9, 2005, alleging that the Appellees violated sections 8(a) and 8(b) of RESPA, codified at 12 U.S.C. § 2607 (a) and (b). Specifically, the Carters alleged that WB Title violates RESPA's anti-kickback and anti-fee-splitting provisions because the entity itself does not and can not provide settlement services. WB Title is allegedly a sham title company which does not perform any settlement work but still receives unearned revenues while the real settlement work is actually performed by Chicago Title. Further, the Carters claim that the Appellees' arrangement allows Chicago Title to provide illegal kickbacks to WB Realty in exchange for the referral of settlement work; WB Realty would receive kickbacks or splits in the form of their share of WB Title's profits, while Chicago Title would be paid for its work through its share of the ownership of WB Title. Crucially, the Carters do not allege that they were overcharged for the title insurance or settlement services. In December 2005, the Appellees responded that WB Title is permissible as an "affiliated business arrangement" as defined by 12 U.S.C. § 2602 (7). They further asserted that WB Title does not violate § 2607(a) or (b) because it satisfies the safe-harbor provision laid out in § 2607(c)(4).

Nearly a year later, the Carters filed a Motion for Class Certification seeking to certify a class which would include any other similarly situated persons. The proposed class would consist of any individuals who paid WB Title for real estate settlement services if they were referred by WB Realty. In response to this motion, the Appellees filed a Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), alleging that the court lacks subject matter jurisdiction because the Carters had suffered no injury-in-fact and thus have no standing.

The District Court granted the Motion to Dismiss for lack of subject matter jurisdiction. The court held that the Carters did not allege any concrete, particularized injury and thus lacked standing to bring a claim under § 2607(a) or (b). *See Carter I*,

493 F. Supp. 2d at 927. In so ruling, the court also denied the Carters' Motion for Class Certification as moot. *Id.* The Carters now appeal.

Although several United States district courts  have addressed this issue – and arrived at different conclusions – no circuit court has squarely confronted the issue of standing in the absence of monetary injury.  Even among the district courts, no consistent interpretation of the phrase "any charges paid" has emerged, with some courts finding that the plaintiff need not pay an overcharge in order to have standing to bring suit[2] and others concluding the opposite.[3]  Consequently, as part of its deliberations on this issue, the court notified the U.S. Department of Housing and Urban Development ("HUD") and the Attorney General that this case involves an as-applied constitutional challenge to RESPA. *See* 28 U.S.C. § 2403(a); Fed.R.App.P. 44(a).  Further, it solicited the government's views on whether consumers alleging a § 2607(a)-(b) violation, absent an overcharge, have standing and whether RESPA, as applied in this case, violates Article III.  The government, therefore, intervened in the case and filed a brief supporting Appellants' interpretation of the statute.

## II. Jurisdiction and Standard of Review

The Sixth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which provides that the courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." § 1291.

Where a district court rules on a 12(b)(1) motion to dismiss that attacks the claim of jurisdiction on its face, this Court reviews the decision *de novo*. *Abbott v. Michigan*,

---

[2] *See Alexander v. Washington Mut., Inc.*, 2008 WL 2600323, at *6 (E.D. Pa. June 30, 2008); *Capell v. Pulte Mortgage L.L.C.*, 2007 WL 3342389, at *4-5 (E.D. Pa. Nov. 7, 2007); *Edwards v. First American Corp.*, 517 F. Supp. 2d 1199, 1204 (C.D. Cal. 2007); *Yates v. All American Abstract Co.*, 487 F. Supp. 2d 579, 582 (E.D. Pa. 2007); *Robinson v. Fountainhead Title Group Corp.*, 447 F. Supp. 2d 478, 488-89 (D. Md. 2006); *Kahrer v. Ameriquest Mortgage Co.*, 418 F. Supp. 2d 748, 756 (W.D. Pa. 2006); *Patton v. Triad Guar. Ins. Corp.*, No. CV100-132, at *5-6, 12 (S.D. Ga. Oct. 10, 2002); *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347 (S.D. Ga. 2000).

[3] *See Carter I*, 493 F. Supp. 2d at 927; *Contawe v. Crescent Heights of America, Inc.*, 2004 WL 2244538, *3-4 (E.D. Pa. Oct. 1, 2004); *Mullinax v. Radian Guaranty, Inc.*, 311 F. Supp. 2d 474, 486 (M.D. N.C. 2004); *Moore v. Radian Group, Inc.*, 233 F. Supp.2d 819, 825-26 (E.D. Tex. 2002); *Morales v. Attorneys' Title Ins. Fund*, 983 F. Supp. 1418, 1427 (S.D. Fla. 1997); *Durr v. Intercounty Title Co. of Ill.*, 826 F. Supp. 259, 260-62 (N.D. Ill. 1993).

474 F.3d 324, 328 (6th Cir. 2007); *see* Fed.R.Civ.P. 12(b)(1). In arguing that the Carters do not have standing to sue because they do not meet the constitutional Article III requirement of injury-in-fact, Appellees challenged the court's jurisdiction over the case. *See Davis v. Federal Election Comm'n*, 128 S. Ct. 2759, 2768 (2008) (Article III "requires that the party invoking federal jurisdiction have standing"). Accordingly, we review the district court's decision to dismiss the case *de novo*.

### III. Discussion

At the heart of this controversy lies a single question: whether a plaintiff must allege a concrete injury such as an overcharge in order to have standing for a RESPA violation. The Carters contend that the district court erred in finding that they lack standing to sue under § 8 of RESPA because they "do not allege any overcharge or other concrete injury."[4] *Carter I*, 493 F. Supp. 2d at 927. Specifically, the Carters argue that the district court's interpretation of § 8 does not accord with the plain meaning of the statutory language and is inconsistent with Congress' intent. Appellant Br. 7-8. Further, the Carters believe that the court should have followed the reasoning in *Kahrer*. *See Kahrer*, 418 F. Supp. 2d at 753 (holding that an overcharge is not necessary for a plaintiff to bring suit on a RESPA violation).

In contrast, Appellees rely on the *Moore*, *Morales*, and *Durr* line of cases to argue that "Congress did not grant a right of action to private plaintiffs to seek recovery of damages when private plaintiffs have not suffered any harm in the form of economic damages or in the form of inflated services without providing any benefits to home buyers." Appellees Br. 12-13; *Moore*, 233 F. Supp. 2d 819; *Morales*, 983 F. Supp. 1418; *Durr*, 826 F. Supp. 259. Further, Appellees allege that because the Carters have not

---

[4] Appellees argued in the court below that the Carters did not have standing to sue under § 8 of RESPA because they "have not met the 'injury-in-fact' requirement for Article III standing because they were not overcharged for settlement services." *Carter I*, 493 F. Supp. 2d at 924. The Carters, in turn, argued that RESPA "creates a right to a free and competitive marketplace, and [Appellees'] interference with this right constitutes an injury in fact." *Id.* (quotations and citation omitted). To reach its conclusion, the district court relied on the logic of the decisions in *Morales* and *Moore*. *See id.* In *Morales*, the court concluded that the measure of damages for a RESPA violation consisted of three times the amount by which the plaintiff was overcharged as a result of the illegal kickback scheme. *See Morales*, 983 F. Supp. at 1427. The *Moore* court addressed this same issue and went further, holding that a plaintiff's private right of action under RESPA's kickback provision was limited to situations where the plaintiff was actually overcharged. *See Moore*, 233 F. Supp. 2d at 825.

alleged either economic damages or an overcharge, they do not meet the Article III requirements of injury.

At issue in this case is § 8 of RESPA which prohibits kickbacks and unearned fees. In relevant part, the statute states the following:

> (a) Business referrals
>
> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
>
> (b) Splitting charges
>
> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(a)-(b). In addition, RESPA provides that defendants "who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount *of any charge paid for such settlement service*." § 2607(d)(2) (emphasis added).

**A. Applicable Legal Standards**

The court will first assess whether RESPA provides the plaintiffs a right to relief and then examine whether they have standing to pursue their claims. Congress unequivocally has the power to create new interests the invasion of which will confer standing. *See Jet Courier Serv. v. Fed. Res. Bank of Atlanta*, 713 F.2d 1221, 1226 n.22 (6th Cir. 1983); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973). When Congress has so acted, the requirements of Article III remain: (1) injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Jet Courier Serv.*, 713 F.2d at 1226 n.22. Nevertheless, "Congress cannot

enact a statute that directly grants standing to a plaintiff who otherwise does not satisfy the Article III requirements," and thus the court must conduct a "detailed consideration of the statute at issue, to discern whether Congress create[d] a statutory right or entitlement the alleged depravation of which can confer standing to sue." *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 677 n.34 (quotations and citation omitted).

According to "traditional canons of statutory interpretation, remedial statutes should be construed broadly to extend coverage and their exclusions or exceptions should be construed narrowly." *Cobb v. Contract Transport, Inc.*, 452 F.3d 543, 559 (6th. Cir. 2006); *see Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 504 (1999) ("It has long been a 'familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes.'" (quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967))).[5] With this in mind, the court begins its interpretation by looking first to the plain language of the statute. *See U.S. v. Turner*, 465 F.3d 667, 671 (6th Cir. 2006). "If the language of the statute is clear, then the inquiry is complete, and the court should look no further." *Brilliance Audio, Inc. v. Haights Cross Commc'n, Inc.*, 474 F.3d 365, 371 (6th Cir. 2007) (citations omitted). In discerning legislative meaning, the court considers other persuasive authority only if the statute is "inescapably ambiguous." *Id.* (citations omitted); *see Limited, Inc. v. C.I.R.*, 286 F.3d 324, 332 (6th Cir. 2007) ("Resort to legislative history is not appropriate, however, if the text of the statute may be read unambiguously and reasonably."). Persuasive authority includes other statutes, interpretations by other courts, legislative history, policy rationales, and the context in which the statute was passed. *Brilliance Audio, Inc.*, 474 F.3d at 372; *see Crandon v. U.S.*, 494 U.S. 152, 158 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.").

---

[5]There is little doubt as to the remedial nature of RESPA's provisions given Congress's finding that "significant reforms in the real estate settlement process are needed," and that it specifically enacted RESPA "to effect certain changes in the settlement process for residential real estate" that would result, in part, "in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(a), (b)(1).

**B. Statutory Interpretation**

*1. Plain Language*

The statute prohibits – in no uncertain terms – the payment of "any fee, kickback, or thing of value" from business referrals and also forbids that a "portion, split, or percentage of any charge made or received for the rendering of real estate settlement" be paid for services that are not actually rendered to the customer.[6]   § 2607(a)-(b). Where a violation of these blanket prohibitions occur, the plain language of the statute provides that defendants are liable to the "person or persons charged for the settlement service involved in the violation for an amount equal to three times the amount of *any charge paid* for such settlement service."  § 2607(d)(2) (emphasis added).

This Court has previously held that "[w]hen the text of a statute contains an undefined term, that term receives its ordinary and natural meaning." *Limited, Inc.*, 286 F.3d at 332.  According to *Webster's New Collegiate Dictionary*, the term "any" means "1: one or some indiscriminately of whatever kind" and "[2(b)]: all – used to indicate a maximum or a whole." *Webster's Ninth New Collegiate Dictionary* 93 (9th ed. 1988). The ordinary definition of "any" indicates that charges are neither restricted to a particular *typ*e of charge (such as an overcharge) nor limited to a specific *part*.  Further, the court notes not only the conspicuous absence of the term "overcharge" within the text of the statute, but also that the phrase "such settlement services" refers to the preceding phrase "settlement services involved in the violation." § 2607(d)(2); Intervenor Br. 12-13.  Taking these factors into consideration, the court finds that a defendant is liable for the charges assessed the home buyer for settlement services *as a whole*, and not just for overcharges.

---

[6]RESPA defines "settlement services" as "any service provided in connection with a real estate settlement" including, but not limited to, title searches, title insurance, attorney services, appraisals, credit reports, pest and fungus inspections, real estate agent or broker services, loan processing, etc. *See* 12 U.S.C. § 2602(3).

*2. Persuasive Authorities*

Because of the varying views of other courts reviewing these provisions and the arguable ambiguity of the "any charges paid" phrase in the statute,[7] the court now turns to the various persuasive authorities available to help guide its analysis.  *Brilliance Audio, Inc.*, 474 F.3d at 372; *Limited, Inc.*, 286 F.3d at 332.

*a. Legislative History*

The legislative history shows that RESPA's damages provision, as originally enacted, stated that a person who violates § 2607 is liable "for three times the amount of the *proscribed payment*, kickback or referral fee."  S. Rep. No. 93-866, at 16 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6546, 6552 (emphasis added).  Specifically, the 1974 version of the statute provided that

> [A]ny person or persons who violate the provisions of subsection (a) shall be jointly and severally liable to the person or persons whose business has been referred in an amount equal to three times the value or amount of the fee or *thing of value*, and any person or persons who violate the provisions of subsection (b) shall be jointly and severally liable to the person or persons charged for the settlement services involved in an amount equal to three times the amount of the portion, split, or percentage.

Real Estate Settlement Procedures Act of 1974, Pub. L. No. 93-533 § 8(D)(2), 88 Stat. 1724 (1974) (emphasis added).  In the years following RESPA's enactment, however, it became clear that the provision "failed to account for 'controlled business arrangements' . . . whereby an entity could provide a referral without the direct payment of a referral fee."  *Edwards*, 517 F. Supp. 2d. at 1203.  Indeed, in 1982, a House Committee Report noted that such practices could result in harm to consumers beyond an increase in the cost of settlement services:

> [In controlled business arrangements] the advice of the person making the referral may lose its impartiality and may not be based on his professional evaluation of the quality of service provided if the referror or his associates have a financial interest in the company being

---

[7]*See* cases cited *supra* notes 2-3.

recommended. . . . [Because the settlement service industry] almost exclusively rel[ies] on referrals . . . the growth of controlled business arrangements *effectively reduce the kind of healthy competition generated by independent settlement service providers.*

*Kahrer*, 418 F. Supp.2d at 754 (quoting H.R. Rep. No. 97-532, at 52 (1982)) (emphasis added). Motivated by these fee-less situations, Congress amended RESPA's damages provision the following year, replacing the "thing of value" language with the phrase "any charge paid for such settlement services." § 2607(d)(2); *see Edwards*, 517 F. Supp. 2d at 1204.

### b. Agency Regulations

As the government points out, HUD is the agency charged with administering and interpreting RESPA. *See* 12 U.S.C. § 2617(a). As such, its regulations are instructive in discerning the meaning of the statute's provisions. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 139, 140 (1944). Although it has not issued any regulation regarding who may bring an action under § 8(d)(2), it has announced its opinion that whether an overcharge occurs "is irrelevant in determining whether the act is prohibited" by RESPA. 24 C.F.R. § 3500.14(g)(2). As an *amicus curiae* in this case, it also has explained that the "language . . . of section 8(d)(2) . . . [indicates that] a person who violates section 8 is liable . . . , regardless of whether the consumer alleges that he was charged too much for the service." Govt. Br. at 21. Even in the absence of a regulation elucidating a specific provision of a statute pursuant to an express delegation of authority, the views of an agency charged with applying a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. *See United States v. Mead*, 533 U.S. 218, 227-28 (2001) (quotations and citations omitted). Therefore, the views propounded by HUD, both in 24 C.F.R. § 3500.14(g)(2) and in its role as an *amicus curiae* in this case, provide further counsel in favor of the view that § 8(d)(2) does not impose an "overcharge requirement" on potential plaintiffs.

*c. Statutory Purpose*

As part of statutory interpretation, the court must also consider the overall intent of the statute.  *See Crandon*, 494 U.S. at 158.  Generally speaking, RESPA sought

> to address Congress' concerns over "controlled business arrangements," whereby real estate settlement business is referred between two affiliated entities, which RESPA had not previously addressed.  Under such circumstances, one entity is able to provide a benefit to its affiliate without the direct payment of a referral fee which . . . could result in harm to consumers beyond an increase in settlement charges . . . .  Specifically, . . . the advice of the person making the referral *may lose its impartiality and may not be based on his professional evaluation of the quality of service provided* if the referror or his associates have a financial interest in the company being recommended.  In addition, since the real estate industry is structured so that settlement service providers do not compete for a consumer's business directly, but almost exclusively rely on referrals from real estate brokers, lenders or their associates for their business, the growth of controlled business arrangements *effectively reduce the kind of healthy competition generated by independent settlement service providers.*

*Kahrer*, 418 Fed. Supp. 2d. at 754 (quoting H.R. Rep. No. 97-532, at 52) (emphasis added).  To address the negative effects on the real estate industry caused by these controlled relationships, "injury in a RESPA case can be shown by harm other than allegations of overcharges," as "the alleged § 8(a) violation presents the possibility for other harm, including a lack of impartiality in the referral and a reduction of competition between settlement service provide[r]s." *Robinson*, 447 F. Supp. 2d at 489.  Therefore, "RESPA allows individuals to police the marketplace in order *to ensure impartiality of referrals and competition* between settlement service providers, thereby creating a market-wide deterrent against unnecessarily high settlement costs." *Capell*, 2007 WL 3342389, at *5 (emphasis added).  Ultimately, "[t]he purpose of the statute is to prevent certain practices that are harmful to all consumers by establishing that consumers have a right *not to be subject to those practices and providing both public and private remedies of that right*." *Kahrer*, 418 F. Supp. 2d at 756 (quoting *Patton*, No. CV100-132, at *5-6, 12).

### C. Article III Standing

We have concluded that, by enacting RESPA, Congress meant to create a new legal right in favor of individuals like the plaintiffs, but we still must determine whether the vindication of that right through a federal-court lawsuit is consistent with the standing requirements of Article III. Congress no doubt has the power to create new legal rights, and it generally has the authority to create a right of action whose only injury-in-fact involves the violation of that statutory right. *Linda R.S.*, 410 U.S. at 617 n.3. But that congressional authority is not unlimited. Among other things, Congress may confer standing to redress injuries only on parties who actually have been deprived of the newly established statutory rights: the "'injury in fact' test requires . . . that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 406 U.S. 727, 734-35 (1972).

Here, Appellants allege that they have been injured by the deprivation of a right conferred by RESPA. The statute creates an individual right to receive referral services untainted by kickbacks or fee-splitting. § 2607(a)-(b). By alleging both that "the sole purpose for the creation of Welles-Bowen Title was to enable Fidelity and/or Chicago Title to provide Welles-Bowen Realty with kickbacks in exchange for [referrals]," and that they themselves received a referral from Welles-Bowen Realty, the Carters have adequately alleged that their own RESPA rights were violated. JA 3-5.

In addition, Congress may empower individuals to sue based only on "personal and individual[ized]" injuries. *Lujan*, 504 U.S. at 560 n.1. Standing does not exist, for example, to enforce "an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law." *Id.* at 572. Even though an injury need not be economic in nature, it still must cause individual, rather than collective, harm. *Morton*, 405 U.S. at 738.

Appellants' claims fit within this condition as well. RESPA does not authorize suits by members of the public at large; it authorizes suits only by individuals who receive a loan that is accompanied by an unlawful referral, which is plainly an individualized injury. Under the Fair Housing Act, market "testers" have the right to

receive "truthful information concerning the availability of housing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982). Yet the Supreme Court has held that standing exists to vindicate this right even when the testers "fully expect [to] receive false information, and [have] no intention of buying or renting a home." *Id*. at 373-374. Just as a violation of the rights of "testers" to receive "truthful information" supports standing, so does a violation of the right to receive referrals untainted by conflicts of interest. *Id*.

*Morales*, it is true, determined that plaintiffs who do not allege that they paid more as a result of a RESPA violation cannot show an injury-in-fact. 983 F. Supp. at 1429. But this reasoning overlooks the Supreme Court's teaching that injuries need not be financial in nature to be concrete and individualized. *See Lujan*, 504 U.S. at 562–63; *Havens Realty Corp.*, 455 U.S. at 373. Because the Carters have pleaded that they themselves were given referrals sullied by kickbacks in violation of RESPA, they have Article III standing to bring these claims.

## IV. Conclusions

In light of the principle that "[t]he actual or threatened injury required by [Article] III may exist solely by virtue of statutes creating legal rights, *the invasion of which creates standing*," *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (emphasis added) (quotations omitted), the court finds that the Carters's allegation that Appellees violated § 8 is an injury-in-fact, meets the requirements of Article III, and is sufficient to survive a 12(b)(1) and 12(b)(6) motion to dismiss. The plain meaning of the statutory language and the persuasive authorities examined by the court indicate that Congress created a private right of action to impose damages where kickbacks and unearned fees have occurred – even where there is no overcharge. Accordingly, the district court's determination is **REVERSED**, and the case is remanded for action consistent with the conclusions herein.