RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0138p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LYNDON BARTHOLOMEW and LATONYA
BARTHOLOMEW,

        *Plaintiffs-Appellants,*

     *v.*

DONALD BLEVINS, JR., LINDA POTTER,
Individually and as Fayette County Deputy
Clerk and Supervisor, and COUNTY OF
FAYETTE,

        *Defendants-Appellees.*

No. 10-6352

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:10-cv-237—Joseph M. Hood, District Judge.

Decided and Filed: May 17, 2012

Before: GUY and COOK, Circuit Judges; GRAHAM, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Leslie Dean, LESLIE DEAN, ATTORNEY AT LAW, PSC, Versailles, Kentucky, for Appellants. Donald R. Todd, TODD & TODD, PLLC, Lexington, Kentucky, for Appellees.

     COOK, J., delivered the opinion of the court, in which GRAHAM, D. J., joined. GUY, J. (pp. 9–11), delivered a separate dissenting opinion.

---

[*]The Honorable James L. Graham, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

COOK, Circuit Judge.  Lyndon and Latonya Bartholomew appeal the district court's dismissal of their civil rights action challenging Fayette County's refusal to accept a photocopy of Latonya's military power of attorney.  We affirm.

I.

Latonya Bartholomew serves in the United States Air Force.  According to the Bartholomews, Latonya executed a military power of attorney designating her husband Lyndon as her attorney-in-fact during her deployment overseas.  In March 2010, Lyndon presented a photocopy of this instrument to the Fayette County Clerk's Office for purposes of recording an original deed and mortgage in the county's real property index records.  The clerk's office rejected the copy as inauthentic and refused to record the deed and mortgage.

The Bartholomews sued the county and members of the clerk's office under 42 U.S.C. § 1983, claiming that the county's rejection of the military power of attorney violated 10 U.S.C. § 1044b.  That statute sets the minimal requirements for executing a military power of attorney and prohibits states from imposing additional requirements.  The Bartholomews moved for a preliminary injunction, arguing that the county's requirement of an original military power of attorney violated § 1044b's prohibition on additional requirements.  In October 2010, the district court ordered the Bartholomews to show cause why § 1044b compelled the county to accept a copy, and why, despite the passage of more than two months, they could not produce an original military power of attorney.  The Bartholomews responded that they could not obtain original copies during Latonya's deployment overseas, and that the county's actions put them "in a terrible situation," causing them to "breach . . . a loan agreement with [a] lender, . . . [and the] inability to refinance or sell the property."

The district court denied the Bartholomews' motion for a preliminary injunction, reasoning that § 1044b did not require the Fayette County Clerk to accept a copy of a military power of attorney in lieu of the original. In light of this conclusion, the district court ordered the Bartholomews to explain why their claims should not be dismissed. The Bartholomews responded by filing a petition for mandamus with this court. The district court dismissed their complaint with prejudice for the reasons stated in its preliminary injunction decision. The Bartholomews timely appealed. A motions panel of this court denied their request for mandamus relief. *In re Bartholomew*, No. 10-6331 (6th Cir. Jan. 6, 2011). During the pendency of this appeal, the Bartholomews obtained and submitted an original military power of attorney to the Fayette County Clerks' Office, who recorded the Bartholomews' deed, mortgage, and power of attorney in April 2011. Defendants-Appellees moved to dismiss the appeal as moot. A later panel denied the motion, noting that the Bartholomews sought compensatory and punitive damages and injunctive relief. *Bartholomew v. Blevins*, No. 10-6352 (6th Cir. Aug. 5, 2011).

II.

Federal-question jurisdiction extends to the Bartholomews' § 1983 claim, 28 U.S.C. § 1331, and we have jurisdiction to hear their appeal from the district court's final judgment, 28 U.S.C. § 1291. We review de novo the district court's dismissal for failure to state a claim, *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 301 (6th Cir. 2011), asking whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

The Bartholomews' complaint effectively asserts one claim: that the clerk's office violated the protections afforded to military powers of attorney by 10 U.S.C. § 1044b. We review the district court's statutory interpretation afresh, starting with the language and structure of the statute. *Shearson v. U.S. Dep't of Homeland Sec.*, 638 F.3d 498, 500 (6th Cir. 2011). Because § 1044b serves a remedial purpose, it "should be construed broadly to effectuate its purposes." *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967); *see also In re Carter*, 553 F.3d 979, 985 (6th Cir. 2009). Nevertheless, if

the plain terms of the statute resolve the dispute, our "sole function . . . is to enforce [the statute] according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)); *see also Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 371 (6th Cir. 2007). If the statutory language fails to provide a clear answer, we may consult persuasive authority, including other provisions in the statute, different statutes, interpretations by other courts, and legislative history. *In re Carter*, 553 F.3d at 986.

Section 1044b provides in pertinent part:

**Military powers of attorney: requirement for recognition by States**

**(a) Instruments to be given legal effect without regard to State law.**--A military power of attorney--

> (1) is exempt from any requirement of form, substance, formality, or recording that is provided for powers of attorney under the laws of a State; and

> (2) shall be given the same legal effect as a power of attorney prepared and executed in accordance with the laws of the State concerned.

**(b) Military power of attorney.**--For purposes of this section, a military power of attorney is any general or special power of attorney that is notarized in accordance with section 1044a of this title or other applicable State or Federal law.

**(c) Statement to be included.--(1)** Under regulations prescribed by the Secretary concerned, each military power of attorney shall contain a statement that sets forth the provisions of subsection (a).

**(2)** Paragraph (1) shall not be construed to make inapplicable the provisions of subsection (a) to a military power of attorney that does not include a statement described in that paragraph.

By virtue of the Supremacy Clause, U.S. const. art. VI, cl. 2, this statute expressly preempts state laws concerning the proper form for powers of attorney. *See, e.g.*, *PLIVA, Inc. v. Mensing*, ___ U.S. ___, 131 S. Ct. 2567, 2577 (2011). Citing paragraphs (a)(1) and (a)(2), the exemption provisions, the Bartholomews argue that their military power of attorney "is exempt from any requirement of form, substance, formality, or

recording" imposed by the State, and thus "given the same legal effect as a power of attorney prepared and executed in accordance with the laws of the State concerned." Under the plain language of the statute, we agree that a *military power of attorney* meeting the minimal requirements of § 1044b qualifies for such treatment. But the Bartholomews did not present a military power of attorney to the clerk's office; they presented a photocopy. Whether a copy qualifies for such protections presents a thornier question.

The statute does not speak of photocopies, certified copies, or reproductions of any sort. Rather, its definition provision describes a "[m]ilitary power of attorney" as "any general or special power of attorney that is notarized in accordance with section 1044a of this title or other applicable State or Federal law." 10 U.S.C. § 1044b(b). Following that provision's reference to § 1044a, we find a list of the armed forces personnel eligible to receive notarial services, 10 U.S.C. § 1044a(a); a list of the armed forces personnel empowered to provide notarial services, *id.* § 1044a(b); a prohibition on fees for these notarial services, *id.* § 1044a(c); and a provision specifying the legal effect of the notarial signature, *id.* § 1044a(d). This latter provision states that "[t]he signature of any such person acting as notary, together with the title of that person's offices, is prima facie evidence that the signature is genuine, that the person holds the designated title, and that the person is authorized to perform a notarial act." *Id.* § 1044a(d).

Reading § 1044a(d) and § 1044b(b) in tandem, we understand the provisions to impose the following minimal requirements for a military power of attorney: (1) a general or specific power of attorney for the benefit of qualifying military personnel; (2) notarization consisting of the notary's signature and office title; (3) performed by personnel authorized to perform notarial services; and (4) a statement setting forth the protections of subsection (a). The clerk's office effectively takes its stand on the second element, distinguishing a copy of a notarized instrument from an original notarized instrument. We agree.

While § 1044b(a) "exempt[s]" a military power of attorney "from any requirement of form, substance, formality, or recording that is provided for powers of attorney under the laws of a State," it still expects that a military power of attorney "[be] notarized in accordance with section 1044a of this title or other applicable State or Federal law," *id.* § 1044b(b).  The Bartholomews do not claim that they presented an original, notarized power of attorney, or a notarized, certified copy of a power of attorney.  Their unnotarized copy thus lacks an essential element of a military power of attorney and does not qualify for § 1044b(a)'s protections.

The Bartholomews challenge this interpretation, citing an IRS legal memorandum, I.R.S. Chief Couns. Adv. 2005-03-001, 2005 WL 122050 (Jan. 21, 2005) (arguing that an attorney-in-fact could correct any omissions in an IRS power of attorney form for an absent taxpayer by filing the appropriate form and attaching "a copy of the original [power of attorney]"); a 2004 decision of the General Services Administration's Board of Contract Appeals, GSBCA No. 16337-RELO; a 2001 Department of Defense regulation, 32 C.F.R. Pt. 153, 66 Fed. Reg. 45169-01; and a Louisiana statute recognizing the preemptive authority of § 1044b, La. Rev. Stat. Ann. § 9:3863.  We deem these sources inapposite; they neither represent Congress's views nor support the Bartholomews' argument that § 1044b's protections apply to a photocopy of a power of attorney.

Still, the Bartholomews contend that the clerk's office imposed an impermissible additional requirement of form.  The clerk's office responds that it followed a general state policy of requiring original instruments, citing an advisory decision by the Kentucky attorney general and statutory provisions addressing different legal instruments.  Though correspondence from the clerk's office makes no mention of these authorities (*see* R. 1, Ex. C), assuming that the clerk's office applied a policy it believed stemmed from state law, the state entity did not *add* requirements of form, substance, formality, or recording.  Whether intended or not, the clerk's office enforced the notarization requirement imposed by § 1044b itself.  Because § 1044b does not grant the

same protections to photocopies, the clerk's office did not violate the law by requesting an original military power of attorney.

The legislative history does not suggest a contrary result. Section 1044b's protections for military powers of attorney passed as part of the National Defense Authorization Act for Fiscal Year 1994. Pub. L. No. 103-160, § 547, 107 Stat. 1547 (1993). The House Armed Services Committee Report that accompanied the legislation described the provision's purpose as follows:

> The past experience of service members and their dependents who executed powers of attorney in advance of recent military operations has shown that some states and territories have refused to honor those powers of attorney because they were not executed in accordance with state or territorial legal requirements. The failure to honor these documents has created substantial hardships for military families.
>
> This section would provide that a power of attorney signed by a person authorized to receive legal assistance and notarized by a person authorized under section 1044a of title 10, United States Code, to perform notarial acts shall be recognized as valid and given full effect by those to whom such a power of attorney is presented.

H.R. Rep. No. 103-200, at 286 (1993). No doubt, Congress intended to simplify the process of preparing and using powers of attorney for military families, and it did so by preempting the states' various formalities for powers of attorney. *See* 10 U.S.C. § 1044b(a); H.R. Rep. No. 103-357, at 132 (1993) (Conf. Rep.) (detailing adoption of § 1044b). Yet in doing so it still retained minimal formalities, including notarization.

We further note that notarization serves an important governmental interest in preventing fraud. "[W]hen a notary public certifies a document, he attests that the document has been executed or is about to be executed, that the notary is confronted by the subscriber, and that the subscriber is asserting the fact of his execution." 58 Am. Jur. 2d Notaries Public § 28 (West 2012); *see also* Ira Shiflett, *Goodbye to Affidavits? Improving the Federal Affidavit Substitute Statute*, 54 Clev. St. L. Rev. 309, 311–14 (2006) (discussing the authenticating features of notarization, such as truth, punishment, identity, and witness); Michael L. Closen & G. Grant Dixon III, *Notaries Public from*

*the Time of the Roman Empire to the United States Today, and Tomorrow*, 68 N.D. L. Rev. 873, 874 (1992) (hereinafter "Closen & Dixon, *Notaries*") ("[W]ithout [notarization], a signature on an important document might not be worth the paper upon which it is written. The potential for fraud would otherwise grind the business and legal worlds to a halt." (citation omitted)).

Notarial functions and methods have evolved over time, becoming more ministerial and less formal. *See* Closen & Dixon, *Notaries*, 68 N.D. L. Rev. at 875–78 & n.15 (tracing development of notarial functions from the multi-purpose, legal-adviser role in ancient Rome to the modern role of administering oaths and witnessing the execution of important documents); *see generally* Unif. Law on Notarial Acts § 2(5) (2010) (identifying notarial acts). Perhaps evocative of this trend, Congress has seen fit to eliminate the need for notarial attestation in certain circumstances, such as when it enacted 28 U.S.C. § 1746 allowing the use of unsworn declarations in federal judicial proceedings. *See* H.R. Rep. No. 94-1616, at 1 (1976) (noting inconvenience of the appearance requirement when the need for notarization arises after business hours or overseas). It did not do so here, despite intending to simplify the process of executing and using military powers of attorney. We therefore find that the clerk's office did not violate § 1044b by requiring the original military power of attorney.

III.

We AFFIRM.

———————

## DISSENT

———————

RALPH B. GUY, JR., Circuit Judge, dissenting.    Although the court acknowledges that we are interpreting a remedial statute that "should be construed broadly to effectuate its purposes," it proceeds, in my view, to do just the opposite.  The time-honored principle of broad construction is avoided by a finding that the statute itself provides a clear answer.  I fully agree that the statute provides a clear answer, but not the one reached by the court.

The statute, which deals exclusively with military powers of attorney, represents an understanding by Congress that those in our armed forces, particularly those serving abroad for extended periods of time, cannot anticipate every situation that might require action on their part if they were home.  An executed power of attorney is one answer to this dilemma.

Neither the clerk who rejected the proffered power of attorney nor the court maintain that the power of attorney was not executed in accordance with the statute. Rather, they read into the statute a requirement that the power of attorney must be an original.  This interpretation is based on the language of U.S.C § 1044a(d):  "The signature of any such person acting as notary, together with the title of that person's offices, is prima facie evidence that the signature is genuine, that the person holds the designated title, and that the person is authorized to perform a notarial act."[1]  In support of its interpretation the court states: "The statute does not speak of photocopies, certified copies, or reproductions of any sort."  I agree, but I do not understand the omission of any reference to "photocopies" to mean that only an original will suffice.  This hardly constitutes a broad construction.

---

[1] The clerk's original rejection was based on reliance on state law, which is specifically preempted by the federal statute.  No contention is made to the contrary, however, it is the litigation posture of the defendants that because the power of attorney did not comply with the requirements of the federal statute, there was no preemption.

To require an original also seems to ignore the circumstances under which a power of attorney executed by a member of the armed forces in a war zone, for example, would be executed. It is hardly feasible to mail the original home. If a member of the armed forces had the forethought to execute a power of attorney before going overseas, this problem probably would be avoided. But the statute is aimed, at least in part, at persons acting under extreme circumstances. The more likely scenario in this digital age, is that the power of attorney would be sent home as an attachment to an email.

Although I do not think any resort to legislative history is either necessary or helpful, I am puzzled by that portion of the legislative history which the court finds lends support to its interpretation. The House Armed Services Committee Report, which I quote again to provide context, states:

> The past experience of service members and their dependents who executed powers of attorney in advance of recent military operations has shown that some states and territories have refused to honor those powers of attorney because they were not executed in accordance with state or territorial legal requirements. The failure to honor these documents has created substantial hardships for military families.

> This section would provide that a power of attorney signed by a person authorized to receive legal assistance and notarized by a person authorized under section 1044a of title 10, United States Code, to perform notarial acts shall be recognized as valid and given full effect by those to whom such a power of attorney is presented.

From this the court concludes that although Congress "intended to simplify the process of preparing and using powers of attorney for military families, and it did so by preempting the states' various formalities for powers of attorney . . . it still retained minimal formalities, including notarization." Since the document in question was notarized, the court imports the requirement that it be an original from the contention that "notarization serves an important governmental interest in preventing fraud." Assuming this to be the case, I would suggest that one consider just what the recording clerk faced when presented with this document. She did not know the person who presented the power of attorney; she did not know the person who executed the power of attorney, or the notary who authenticated the signature; she did not have any way of

knowing if the notary was even a person authorized to authenticate a signature, and all of this would have been the situation whether she had been presented with an original or a copy. All she knew was that she was to accept only originals for recording. It is clear that if fraud is the concern, the recording clerk would have been in no better position to detect it, whether presented with an original or a copy.

This seems to be a particularly odd time in history to be concerned about copies. We live in a world of copies, whether it be faxes, email attachments, or any number of other digital transmissions. Indeed, for many years the Federal Rules of Evidence has provided in Rule 1003 that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Since the Federal Rules of Evidence bear the imprimatur of Congress, this is at least some insight, in a global sense, about how Congress feels about the reliability of copies.

Since this is a § 1983 action, I do not mean to pass any judgment on the clerk who was following what she understood to be the limit of her powers to accept copies. If three federal judges cannot agree on what a statute means, I cannot fault a recording clerk for being uncertain. Since the document sought to be recorded was actually recorded long ago, this all would be somewhat of an exercise in futility were it not for the fact that with a large number of persons still serving in the armed forces this situation is capable of repetition.

I would reverse the district court based upon the interpretation made of the statute at issue, but would not pretermit the possibility of disposition of this matter on other grounds.